******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALAN MEEKER *v.* CECILE MAHON ET AL.
(AC 37841)

Lavine, Keller and Bear, Js.

*Argued March 1—officially released August 16, 2016*

(Appeal from Superior Court, judicial district of
Windham, geographical area number eleven,
Spellman, J.)

*R. Bradford Fawley*, for the appellant (plaintiff).

*Steven T. Kulig*, for the appellees (named defendant
et al.).

*Opinion*

BEAR, J. The plaintiff, Alan Meeker, appeals from the judgment of the trial court, rendered after a bench trial, in favor of the defendants Cecile Mahon and David Mahon, Sr., nontenant cosigners of a lease between the plaintiff and the defendant lessees, David Mahon, Jr., and Melissa Choquette (tenants).[1] The court determined that the defendants were not liable for damages caused and rent owed by the tenants occurring after September 30, 2012, the expiration date of the lease. On appeal, the plaintiff claims that the court erred (1) in concluding that the defendants, as cosigners of the lease, were responsible to the plaintiff for any unpaid damages and rent incurred only during the specifically defined term of the lease; and (2) in considering evidence extrinsic to the lease in order to discern the parties' intent when the court determined that the intent of the parties was fully reflected in the four corners of the lease and no ambiguity has been claimed or identified. We affirm the judgment of the trial court.

On June 16, 2014, the plaintiff instituted this action for damages, resulting from the breach of a residential lease, against the tenants and the defendants. Following a two day trial, the court on March 16, 2015, rendered judgment in favor of the plaintiff on his claim for damages against the tenants. The court, however, rendered judgment in favor of the defendants as to all claims against them. This appeal followed.

The following factual findings of the court and procedural history are relevant to this appeal. On or about September 16, 2011, the plaintiff entered into a written lease agreement for a term beginning on September 16, 2011, and ending on September 30, 2012, with the tenants for a residential property in Danielson. The defendants cosigned the lease, agreeing to be "jointly liable for the lease, its payments, and other responsibilities, until the lease has expired . . . ." After September 30, 2012, the end of the term of the lease, the tenants continued to occupy the premises pursuant to a month-to-month tenancy until May 5, 2014. The tenants failed to pay rent from April 1 to May 5, 2014, when they left the property. When the tenants vacated the premises, there was damage to the property that had not existed when the plaintiff visited the premises in November, 2012. The plaintiff hired a contractor to repair the damage.

In its memorandum of decision, the court, applying the usual civil fair preponderance of the evidence standard, determined that whether the defendants could be held liable for damages to the property and for nonpayment of rent that occurred during the month-to-month tenancy created by the tenants' consensual holdover was a question of fact. The court reasoned: "The hold over by the tenants in this case created a new tenancy,

and while the original lease made the [tenants] subject to the terms and conditions of the original lease in the new month-to-month tenancy, the court finds by a preponderance of the evidence that the defendants . . . as nontenant cosigners of the original written lease cannot be held liable for damages arising from the new month-to-month tenancy created by the lessee[s] holding over with the consent of the lessor." The court also found that the guarantee of the defendants as nontenant cosigners was not a term or condition of the original lease within the meaning of the holdover provision of the lease, but instead it was a contract separate from that lease. Accordingly, the court found that any liability of the defendants expired on September 30, 2012, when the lease expired. Having already found that any damage to the property occurred after the plaintiff visited the property in November, 2012, the court found that the defendants were not liable for any damages claimed in this action because their liability was extinguished by the expiration of the lease on September 30, 2012.

During the pendency of this appeal, and in compliance with an order of this court, the trial court issued an articulation of its decision in which it clarified that the only evidence outside of the four corners of the lease that it considered was (1) the fact that the lease was drafted by the plaintiff;[2] and (2) that the plaintiff failed to show by a preponderance of the evidence that the intent of the parties was anything other than that shown in the document the plaintiff drafted and that was initialed where agreed to by the defendants.

I

The plaintiff claims that the court erred in concluding that the defendants, as nontenant cosigners, were responsible to him for the tenants' obligations only during the term of the lease, which ended on September 30, 2012. The plaintiff argues that, pursuant to the unambiguous contract language, the defendants were liable for any damage to the subject property and nonpayment of rent after September 30, 2012. We disagree.

As a preliminary matter, we set forth the standard of review and guiding principles. The resolution of this appeal requires us to interpret the language of two written agreements: the agreement between the plaintiff and the defendants (guarantee),[3] and the lease between the plaintiff and the tenants. The guarantee and the lease are contracts. See *Welk* v. *Bidwell*, 136 Conn. 603, 606, 73 A.2d 295 (1950) (lease); *D'Amato Investments, LLC* v. *Sutton*, 117 Conn. App. 418, 423, 978 A.2d 1135 (2009) (guarantee). The standard of review for contract interpretation is well established. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of

law [over which our review is plenary].” (Internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007). Where the language of an agreement is susceptible to more than one reasonable interpretation, however, it is ambiguous. *19 Perry St., LLC* v. *Unionville Water Co.*, 294 Conn. 611, 623, 987 A.2d 1009 (2010). “Ordinarily, such ambiguity requires the use of extrinsic evidence by a trial court to determine the intent of the parties, and, because such a determination is factual, it is subject to reversal on appeal only if it is clearly erroneous.” (Internal quotation marks omitted.) *Joseph General Contracting, Inc.* v. *Couto*, 317 Conn. 565, 575, 119 A.3d 570 (2015). “[T]he determination . . . whether contractual language is plain and unambiguous is itself a question of law subject to plenary review.” *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 101–102, 84 A.3d 828 (2014).

“[A]ny ambiguity in a contract must emanate from the language used by the parties. . . . [A] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.” (Internal quotation marks omitted.) *D’Amato Investments, LLC* v. *Sutton*, supra, 117 Conn. App. 424.

A

The plaintiff argues that the provisions of the two agreements establish that the parties intended to obligate the defendants to guarantee the performance of the tenants’ obligations under the lease until the final expiration of any lease extensions, which included any holdovers. We disagree.

“A guarant[ee] is a promise to answer for another’s debt, default, or failure to perform a contractual obligation.” *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 675, 94 A.3d 622 (2014). “[A] guarant[ee] agreement is a separate and distinct obligation from that of the note or other obligation.” Id. “[Guarantees] are . . . distinct and essentially different contracts; they are between different parties, they may be executed at different times and by separate instruments, and the nature of the promises and the liability of the promisors differ substantially . . . . The contract of the guarantor is his own separate undertaking in which the principal does not join.” (Citations omitted; internal quotation marks omitted.) *Carpenter* v. *Thompson*, 66 Conn. 457, 463–64, 34 A. 105 (1895). The independence of these contracts is not affected by the fact that they are executed contemporaneously or in the same document. See id.; 38 Am. Jur. 2d 950–51, Guaranty § 4 (2010).

"When two agreements . . . are connected by reference and subject matter, both are to be considered in determining the real intent of the parties. . . . Where . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties." (Citation omitted; internal quotation marks omitted.) *Regency Savings Bank* v. *Westmark Partners*, 59 Conn. App. 160, 164–65, 756 A.2d 299 (2000).

Contracts must be given a reasonable interpretation and the words used their common, natural, and ordinary meaning and usage; *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 293 Conn. 218, 226, 975 A.2d 1266 (2009); unless a technical or special meaning is clearly intended. *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, supra, 284 Conn. 8. "Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons." 11 S. Williston, Contracts (4th Ed. 2012) § 32:6, p. 709.

In the present case, the defendants' guarantee, which appeared on the last page of the lease document and was entitled "Non tenant Co-signers," provided, in its entirety: "By signing, we understand that we are jointly liable for this lease, its payments, and other responsibilities, *until the lease has expired*, or until the landlord secures a new lessee (in the case that the tenants choose to vacate the premises prior to the term of this lease)." (Emphasis added.) Although the defendants' guarantee is contained in the same document as the lease, that guarantee is a contract separate from the lease. Additionally, the guarantee is not of unlimited duration because there is an outside time limit on its applicability. It is effective "until the lease has expired." Because the guarantee itself did not set forth a specific date, e.g., September 30, 2012, when the lease ended, we must look to the lease for that date. See *Regency Savings Bank* v. *Westmark Partners*, supra, 59 Conn. App. 164–65.

The lease provided in paragraph 3: "If the tenant decides to vacate the premises prior to the term of the lease, tenants will be responsible for monthly rent payments until the lease expires (September 30, 2012), or until Owner secures another tenant, whichever happens first . . . ." We read similar or identical terms and words throughout a contract to have a consistent meaning. Accordingly, the lease expired on September 30, 2012, which is consistent with the term of the lease set forth at the beginning of the document as running from September 16, 2011 through September 30, 2012. Consequently, the guarantee obligated the defendants to be jointly liable for the "lease, its payments and

other responsibilities, until" September 30, 2012. The unambiguous language of the guarantee, read in conjunction with the unambiguous language of the lease, informs and supports our legal conclusion that the defendants' liability for any of the tenants' lease obligations did not include any of those obligations occurring on dates after the lease expired on September 30, 2012.

B

The plaintiff argues, however, that the lease did not expire until any extensions of the lease expired and that the holdover of the tenants, contemplated in paragraph 17 of the lease, constituted an extension. We disagree.

The holdover provision contained in paragraph 17 of the lease provides: "Should Tenants remain in possession of the Premises with the consent of Owner after the expiration of this Lease, a new tenancy from month to month shall be created between Owner and Tenant which shall be subject to all the terms [and] condition[s] hereof, but shall be terminable on thirty days written notice served by either party to the other party." The plaintiff argues that paragraph 17 does not create a new contract or lease, but merely extends the period of the tenants' occupancy under the original lease. Relying on principles governing extensions and covenants to renew,[4] the plaintiff distinguishes paragraph 17 from a covenant to renew with a new lease for a distinct term and argues that it acts to extend the original lease with all of its terms and conditions. He argues, therefore, that the lease did not expire until the extensions expired.

This analysis is flawed, however, in its claimed application to the defendants' guarantee. The plaintiff's extension argument is inconsistent with the limit of the application of the guarantee to tenant obligations occurring on or before September 30, 2012, the defined expiration date of the lease. As a separate contract; see *JP Morgan Chase Bank*, *N.A.* v. *Winthrop Properties*, *LLC*, supra, 312 Conn. 675; the guarantee was not a term or condition of the lease. The text of the lease between the plaintiff and the tenants, for example, did not incorporate the guarantee between the plaintiff and the defendants into the lease, and paragraph 17, the holdover provision, does not incorporate or otherwise refer to the guarantee. Conversely, the guarantee between the plaintiff and the defendants did not contain any provision continuing or extending the defendants' guarantee obligation beyond September 30, 2012, in the event of the creation of a new month-to-month tenancy between the plaintiff and the tenants. Accordingly, the plain language and meaning of the relevant term of the guarantee between the plaintiff and the defendants is that the defendants' guarantee ended when the lease expired on September 30, 2012, and, thus, the parties did not agree to hold the defendants liable for the tenants' obligations occurring after that date.

Moreover, while holding over under a lease could operate to extend the lease if that was provided for in the lease, the lease in this case does not include any such language. The holdover provision instead states that after the expiration of the lease—September 30, 2012—a new tenancy from month-to-month arises upon the agreement of the plaintiff on the same terms and conditions contained in the lease. Although many of the responsibilities and obligations between the plaintiff and the tenants remained the same as under the lease, the type of tenancy, notice provisions, and duration changed. Cf. *FJK Associates* v. *Karkoski*, 52 Conn. App. 66, 68, 725 A.2d 991 (1999) ("In the case of a rental on a month-to-month basis the tenancy is not regarded as a continuous one. The tenancy for each month is one separate from that of every other month. [Internal quotation marks omitted.]").

In *Bockelmann* v. *Marynick*, 788 S.W.2d 569, 570 (Tex. 1990), the Supreme Court of Texas addressed a similar holdover provision when the plaintiff sought to hold a former cotenant liable after she vacated the premises. The original lease was one for a specific twelve month term, but the cotenant remained for longer than a year and subsequently defaulted. Id. The holdover clause in the lease in that case provided: "Should [the tenant] remain in possession of the demised premises with the consent of [the lessor] after the natural expiration of this lease, a new tenancy from year to year shall be created between [the lessor] and [the tenant] which shall be subject to all the terms and conditions hereof but shall be terminable by 60 days notice." Id. The Texas Supreme Court held: "Under [our] common law holdover rule, a landlord may elect to treat a tenant holding over as either a trespasser or as a tenant holding under the terms of the original lease.[5] . . .  The lease incorporated this rule of holdover, providing that, if the landlord consent[ed], a 'new tenancy' would be created if the tenant remained in possession beyond expiration of the lease. The lease stated that this new tenancy would be subject to the same terms and conditions as the original tenancy, except that the holdover tenancy would be 'from year to year . . . terminable by 60 days notice.' Thus, under the express terms of the lease, this holdover tenancy was a new tenancy rather than an extension or renewal of the original lease." (Citation omitted; footnote added.) Id., 571–72. Similarly, the holdover provision here did not extend the existing lease, but created a new tenancy from month-to-month.[6]

The trial court found that the plaintiff visited the property in November, 2012, and there was no damage to the premises at that time. Thus, the claimed damages occurred after September 30, 2012. Additionally, the rent was not paid for April and May, 2014. The plaintiff does not challenge these findings. Consequently,

because their liability ended when the lease expired on September 30, 2012, and was not extended by the terms of either of the two agreements, the defendants are not liable for these claimed damages arising after that date.

## II

The court noted in its memorandum of decision that the defendants and tenants initialed certain paragraphs of the lease. In its articulation, the court added that "the [plaintiff] failed to show . . . that the intent of the parties was anything other than that shown in the document he drafted *and* [*that*] *was initialed where agreed to by* [*the defendants*]." (Emphasis added.) The court further stated that, if concerns remained after the expiration of the original term of the lease about the tenants' credit, "[the plaintiff] should have insisted on a [cosigner] for the new tenancy created, as the original document he drafted was not initialed and agreed to by [the defendants] in the operative paragraph 17." The court also noted that it considered that the plaintiff drafted the lease.

The plaintiff makes several arguments that the court erred in considering extrinsic evidence in this case, including, inter alia, that the court improperly considered that he had drafted the lease.[7] Because the only reasonable construction of the language of the guarantee, read in conjunction with the lease, is that the defendants' liability for the obligations of the tenants did not extend to the tenants' obligations occurring after the lease expired on September 30, 2012, we conclude that the relevant language of these agreements was unambiguous. Accordingly, we agree that the court's consideration of any evidence extrinsic to these documents was improper, as was its analysis of the guarantee as an issue of fact. Nevertheless, when a trial court reaches a correct decision but on improper grounds, this court may affirm if a proper basis exists to support the decision. *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978); *Geremia* v. *Geremia*, 159 Conn. App. 751, 779, 125 A.3d 549 (2015). We conclude as a matter of law, pursuant to the unambiguous terms of the guarantee and separate lease, that the defendants have no liability to the plaintiff for any damages or nonpayment by the tenants occurring after September 30, 2012.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff brought this action against David Mahon, Jr., and Melissa Choquette as tenants for breach of a lease, and against Cecile Mahon and David Mahon, Sr., as "nontenant cosigners." David Mahon, Jr., and Choquette have not appealed the judgment of the trial court. Accordingly, all references to the defendants in this opinion are to David Mahon, Sr., and Cecile Mahon.

The record indicates that David Mahon, Sr., and David Mahon, Jr., are not in fact senior and junior. The case name and the trial court utilized these designations, however, and, for consistency, we will as well.

[2] In its articulation, the court referred to the plaintiff as the "defendant-appellant," but, read in context, we interpret this usage to refer to the plaintiff.

[3] The court characterized the defendants as guarantors and interpreted

their agreement as a guarantee. The plaintiff does not now nor did he raise before the court any challenge to the characterization of the defendants as guarantors or the nature of their agreement as a guarantee. Any claim concerning whether the contractual language leads to a contrary conclusion, therefore, has not been preserved. See *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014) ("[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." [Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.]). Accordingly, we treat and refer to the agreement between the defendants and the plaintiff as a guarantee.

[4] In distinguishing lease extensions from covenants to renew in lease agreements, our Supreme Court has stated that in the case of extensions, "the original lease operates as a continuous one, and the holding for a term exceeding the minimum provided in the agreement does not require any additional instrument to give it validity"; *City Coal Co.* v. *Marcus*, 95 Conn. 454, 459, 111 A. 857 (1920); and "upon the performance of stipulated acts, the same lease continues in force during the additional period." *Carrano* v. *Shoor*, 118 Conn. 86, 93, 171 A. 17 (1934). Indeed, a lease extension has been defined as "a stipulation in a lease intended merely to lengthen its time upon the terms and conditions stated in the original lease . . . ." 52 C.J.S. 97, Landlord & Tenant § 70 (2012).

[5] Similarly, Connecticut law allows a holdover tenant to be considered as a tenant at sufferance; General Statutes § 47a-3d; *FJK Associates* v. *Karkoski*, supra, 52 Conn. App. 68; or as a month-to-month tenant. General Statutes § 47a-3b; *Bellini* v. *Patterson Oil Co.*, 156 Conn. App. 158, 164, 111 A.3d 987 (2015). Our law, however, does not impose the original lease terms upon parties who have not agreed that such terms apply to a holdover tenancy. *United Social & Mental Health Services, Inc.* v. *Rodowicz*, 96 Conn. App. 34, 40–41, 899 A.2d 85, cert. denied, 280 Conn. 920, 908 A.2d 546 (2006).

[6] The plaintiff also argues that "tenancy" in this instance merely implicates a new period of time. This argument, however, ignores the specific language of paragraph 17 of the lease that, in the event of the tenants' holding over after September 30, 2012, with the plaintiff's consent, "a new tenancy from month to month shall be created . . . ." Additionally, the definition of tenancy advocated by the plaintiff does not impact our interpretation of the guarantee, because it does not change the plain language that the defendants' liability was limited to the tenants' obligations that arose prior to when the lease expired on September 30, 2012.

[7] In particular, the plaintiff argues that the court improperly considered such evidence, ignoring paragraph 28 of the lease, which provides: "The parties acknowledge each to the other that they have reviewed this agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease." When the language in a contract is ambiguous, our courts construe those ambiguities against the drafter. *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 13–14, 938 A.2d 576 (2008). "[This] doctrine, however, applies only after the court determines that the language in the contract is ambiguous." (Emphasis omitted.) *Dinardo Seaside Tower, Ltd.* v. *Sikorsky Aircraft Corp.*, 153 Conn. App. 10, 35, 100 A.3d 413, cert. denied, 314 Conn. 947, 103 A.3d 976 (2014).