******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# 1916 POST ROAD ASSOCIATES, LLC *v.* MRS. GREEN'S OF FAIRFIELD, INC., ET AL.
## (AC 41276)

DiPentima, C. J., and Prescott and Bright, Js.

*Syllabus*

The plaintiff, which had entered into a commercial lease for certain of its real property, sought to recover damages from the defendant U Co., the guarantor on the commercial lease, which had been assigned to N Co. When N Co. assigned its interest to G Co., U Co. confirmed in a letter to the plaintiff that its guarantee would remain in effect. During the term of G Co.'s lease, G Co. was sold to P Co. Prior to the sale, U Co. sent a second letter to the plaintiff in which U Co. requested that the plaintiff irrevocably waive its option to cancel the lease as a result of P Co.'s acquisition of G Co., and that neither P Co.'s acquisition of G Co. nor the cancellation waiver would limit U Co.'s obligations under the guarantee. Thereafter, G Co., in connection with its acquisition by P Co., informed the plaintiff that it was exercising its option to extend the lease term beyond the original termination date of the lease. The plaintiff then consented to the acquisition of G Co. by P Co. and waived its option to cancel the lease. Thereafter, G Co. failed to pay rent owed, and the plaintiff obtained a judgment in its favor in a summary process action against G Co. and evicted G Co. for failure to pay rent. Subsequently, the plaintiff brought this action, in which it claimed that U Co. was liable for G Co.'s debts to the plaintiff. U Co. filed a motion for summary judgment, asserting that, under the language of the guarantee, it could not be held liable for a breach that occurred after the expiration date of the original lease term. The plaintiff claimed that U Co.'s two letters to the plaintiff created a genuine issue of material fact as to whether U Co.'s guarantee was expanded or modified to cover the optional lease term. The trial court granted U Co.'s motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Held* that the trial court properly granted U Co.'s motion for summary judgment, as the unambiguous language in U Co.'s two letters to the plaintiff did not change U Co.'s obligations under the guarantee and, thus, there was no genuine issue of material fact as to whether U Co.'s guarantee covered the optional extension period of the lease agreement; there was no language in the first letter that supported the plaintiff's claim that it served to create a new guarantee, as the unambiguous language of the letter did nothing more than assure the plaintiff that U Co.'s guarantee would not be unenforceable as a result of the lease assignment to G Co., there was no indication in the second letter that the guarantee was being modified in consideration of the plaintiff's consent to the acquisition of G Co. by P Co., as there was no reference to G Co.'s exercise of its option to extend the lease, and the plaintiff's contention that U Co.'s reference to a future transaction referred to the extension of the lease term was at best speculation, which alone was not sufficient to overcome a motion for summary judgment.

Argued February 14—officially released June 25, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of a guarantee of a commercial lease, brought to the Superior Court in the judicial district of Fairfield, Housing Session at Bridgeport, where the named defendant et al. were defaulted for failure to plead; thereafter, the court, *Rodriguez, J.*, granted the motion for summary judgment filed by the defendant United Natural Foods, Inc., and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Robert D. Russo*, for the appellant (plaintiff).

*Robert C. Hinton,* for the appellee (defendant United Natural Foods, Inc.).

*Opinion*

DiPENTIMA, C. J. The plaintiff, 1916 Post Road Associates, LLC, appeals from the summary judgment rendered in favor of the defendant United Natural Foods, Inc.[1] The plaintiff contends that the trial court improperly rendered summary judgment because two separate letters sent by the defendant create a genuine issue of material fact as to whether the defendant's guarantee of the terms of a commercial lease continued through an optional extension period following the expiration of the original lease term. We disagree and, accordingly, affirm the judgment of the trial court.

Viewed in the light most favorable to the plaintiff as the nonmoving party, the record reveals the following facts and procedural history. The plaintiff is the owner of real property located at 1916 Post Road in Fairfield, Connecticut. On May 24, 1996, the plaintiff entered into a fifteen year lease agreement (lease) with Sweetwater Associates, Inc. (Sweetwater), and on May 1, 1997, the lease term began.[2] Five months later, on November 7, 1997, Sweetwater assigned the lease to Natural Retail Group, Inc. (Natural Retail), and, on the same day, the defendant guaranteed "the payment and performance by the [a]ssignee of all of its obligations under the [l]ease and all of the obligations of the [t]enant as defined under the [l]ease effective as of the date hereof." On April 4, 1999, Natural Retail subsequently assigned its interest to Mrs. Green's of Fairfield, Inc. (Mrs. Green's); in a letter dated May 13, 1999, the defendant confirmed that its guarantee would remain in effect despite the assignment of the lease to Mrs. Green's.[3]

At some point during the original lease term, the shareholders of Mrs. Green's sold all interest in the business to Planet Organic Health Corp. Prior to this sale, the defendant sent a second letter, dated June 28, 2007, to the plaintiff indicating that it had "no objection to the acquisition of the shares of [Mrs. Green's] by Planet Organic Health Corp. or its affiliates . . . ." In addition to communicating that it had no objection to the acquisition of Mrs. Green's, the defendant also requested that the plaintiff "irrevocably waive its option to cancel the [l]ease as a result of the [a]cquisition . . . without prejudice to [the plaintiff's] right to exercise such option in connection with a future transaction."[4] Finally, the defendant stated that "neither the [a]cquisition nor the [c]ancellation [w]aiver shall in any way limit [the defendant's] obligations under the existing guarant[ee] made by [the defendant] in favor of [the plaintiff]."

On July 3, 2007, in connection with Planet Organic Health Corp.'s acquisition of Mrs. Green's, the plaintiff received a letter from Mrs. Green's with several enclosures. Among those enclosures was a notice from Mrs. Green's that it was exercising its option to extend the

lease term from the original termination date through April 30, 2017.[5] Also included were a copy of the defendant's June 28, 2007 letter to the plaintiff and lease guarantees from Planet Organic Health Corp. and Planet Organic Holding Corp. Sometime after receiving the July 3, 2007 letter from Mrs. Green's, the plaintiff consented to the acquisition of Mrs. Green's by Planet Organic Health Corp. and waived its option to cancel the lease.

During the extension period, Mrs. Green's failed to pay the rent owed for November, 2016.[6] Thereafter, on January 5, 2017, the plaintiff served Mrs. Green's with a notice to quit the premises and, on February 15, 2017, commenced a summary process action to evict Mrs. Green's. Judgment in the summary process action was rendered in favor of the plaintiff on March 1, 2017, and Mrs. Green's was evicted on March 17, 2017. The plaintiff claims that, despite diligent efforts, it was unable to re-lease the premises prior to the expiration of the extended lease term, April 30, 2017.

On April 24, 2017, the plaintiff commenced the present action against the defendant. The complaint alleges that the defendant is liable for the debts of Mrs. Green's pursuant to the terms of the November 7, 1997 guarantee, as confirmed by the May 13, 1999 letter. On July 31, 2017, the defendant filed an answer and special defenses, in which it admitted that it had entered into a written guarantee of the lease obligations of Mrs. Green's, but denied that it was liable for that company's debts to the plaintiff. Then, on September 20, 2017, the defendant filed a motion for summary judgment, arguing that there was no genuine issue of material fact as to whether the guarantee extended through the optional extension period beyond the original lease term and, on the basis of the language in the guarantee, the defendant could not be held liable for a breach that occurred after the expiration of the original lease term. The plaintiff filed an opposition to the defendant's motion, contending that the defendant's guarantee did apply to the optional extension period or, "[a]t the very least," there was a factual dispute as to this issue. On December 18, 2017, the court granted the defendant's motion for summary judgment.[7] This appeal followed.

On appeal, the plaintiff claims that the trial court improperly granted the defendant's motion for summary judgment because there is a genuine issue of material fact that the defendant's guarantee continued through the optional extension period following the expiration of the original lease term. We disagree and, therefore, affirm the judgment of the trial court.

We begin by setting forth the relevant standard of review and legal principles that govern our review. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Cruz* v. *Schoenhorn*, 188 Conn. App. 208, 214–15, 204 A.3d 764 (2019).

The standard of review for contract interpretation is also well established. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]. . . . Where the language of an agreement is susceptible to more than one reasonable interpretation, however, it is ambiguous. . . . [T]he determination . . . whether contractual language is plain and unambiguous is itself a question of law subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Meeker* v. *Mahon*, 167 Conn. App. 627, 632–33, 143 A.3d 1193 (2016). "Furthermore, a presumption that the language used is definitive arises when . . . the contract at issue is between sophisticated parties and is commercial in nature." (Internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 314, 948 A.2d 318 (2008). It is undisputed that the parties to this case are corporations and that the transaction was commercial in nature.

"[Guarantees] are . . . distinct and essentially different contracts; they are between different parties, they may be executed at different times and by separate instruments, and the nature of the promises and the liability of the promisors differ substantially . . . . The contract of the guarantor is his own separate undertaking in which the principal does not join." (Internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 675–76, 94 A.3d 622 (2014); see also *Wolthausen* v. *Trimpert*, 93 Conn. 260, 265, 105 A. 687 (1919) ("[a] guaranty is a

collateral undertaking to pay a debt or perform a duty, in case of the failure of another person, who is in the first instance liable to such payment or performance" [internal quotation marks omitted]).

This court previously has addressed whether a guarantor of a lease can be held liable for a default that occurred during an extension period following the expiration of the original lease term. See *Village Linc Corp.* v. *Children's Store, Inc.*, 31 Conn. App. 652, 626 A.2d 813 (1993). In *Village Linc Corp.*, the plaintiff appealed from the trial court's denial of an application for a prejudgment remedy against defendants who had guaranteed a rental lease. Id., 652–53. The trial court denied the prejudgment remedy on the ground that the plaintiff had failed to adduce sufficient evidence to show that the defendants' guarantee was intended to secure the renewed lease period in which the default had occurred. Id., 658. On appeal, this court affirmed the judgment of the trial court. Id., 660. In reaching that decision, this court noted that the guarantee did not refer to any lease renewal and that the lease renewal itself did not include any indication that the guarantee would continue to apply. Id., 659–60. Further, the court contrasted the language in the defendants' guarantee with those cases in which the parties clearly intended a continuing guarantee to have been created. Id. For example, in *Connecticut National Bank* v. *Foley*, 18 Conn. App. 667, 560 A.2d 475 (1989), the guarantee provided that the guarantor could be held "responsible for everything the borrower owes . . . *now and in the future*." (Emphasis in original; internal quotation marks omitted.) Id., 670. Similarly, in *LeCraw* v. *Atlanta Arts Alliance, Inc.*, 126 Ga. App. 656, 191 S.E.2d 572 (1972), the language of the guarantee provided that if a default occurred " 'at any time' " during the lease, the guarantor would assume responsibility for the tenant's obligations. Id., 657; see also *Zero Food Storage, Inc.* v. *Udell*, 163 So. 2d 303, 304–305 (Fla. App. 1964). Conversely, the guarantee in *Village Linc Corp.* provided that it applied to the original lease term and made no mention of its applicability to any potential lease renewals. In light of this evidence, the court concluded that the decision to deny the application for a prejudgment remedy against the guarantor was not clearly erroneous. *Village Linc Corp.* v. *Children's Store, Inc.*, supra, 660.

Here, the defendant claims that the present case is similar to *Village Linc Corp.* because the November 7, 1997 guarantee contains no indication that it was intended to continue in the event the tenant exercised its option to extend the lease term. In support of this argument, the defendant cites the provision of the guarantee that specifies it is limited to the payment and performance of the tenant's obligations under the lease "effective as of the date hereof." The defendant contends that this provision unambiguously limits the guarantee to the obligations that the tenant had under the

lease when the guarantee went into effect, which did not include the optional lease term. In response, the plaintiff does not dispute that the November 7, 1997 guarantee references the original lease term and, thus, was not intended to cover the optional extension period.[8] Instead, the plaintiff rests its argument on the May 13, 1999 letter and the June 28, 2007 letter, arguing that the language in these letters creates a genuine issue of material fact as to whether the guarantee was expanded or modified to cover the optional lease term.

With respect to the May 13, 1999 letter, the plaintiff argues that, in confirming that its guarantee would remain in effect despite the assignment of the lease to Mrs. Green's, the defendant did not indicate that the guarantee was limited to the original lease term. In essence, the plaintiff infers that this letter served to create a new guarantee—one that was not limited to the original lease term—in consideration of the plaintiff's consent to the assignment of the lease. As to the June 28, 2007 letter, the plaintiff contends that it was sent in contemplation not only of the acquisition of Mrs. Green's by Planet Organic Health Corp. but also of the lease extension, and was intended to modify the guarantee to cover this period in consideration of the plaintiff waiving its right to cancel the lease. We do not read these two letters to the same effect.

First, as to the May 13, 1999 letter, there is no language in the document that supports the plaintiff's claim that it served to create a new guarantee. Rather, the letter merely confirms that the obligations of the defendant, as guarantor, would not change as a result of the plaintiff's consent to the assignment of the lease to Mrs. Green's. See footnote 3 of this opinion. Those obligations were created by the November 7, 1997 guarantee, which the plaintiff does not dispute was limited to the original lease term. As such, the unambiguous language of the May 13, 1999 letter does nothing more than assure the plaintiff that the defendant's guarantee would not be unenforceable as a result of the lease assignment. See *Meeker* v. *Mahon*, supra, 167 Conn. App. 635–36 (holding that "unambiguous language of the guarantee, read in conjunction with the unambiguous language of the lease," supported legal conclusion that defendants' liability for any of the tenants' lease obligations did not include any of those obligations occurring on dates after the lease expired).

Second, in reviewing the defendant's June 28, 2007 letter to the plaintiff, we can discern no indication that the guarantee was being modified in consideration of the plaintiff's consent to the acquisition of Mrs. Green's by Planet Organic Health Corp. As stated previously in this opinion, the June 28, 2007 letter: (1) provides that the defendant has no objection to the acquisition of Mrs. Green's by Planet Organic Health Corp.; (2) requests that the plaintiff waive its right to cancel the

lease; and (3) confirms that the plaintiff's consent to the acquisition of Mrs. Green's by Planet Organic Health Corp. would not affect the defendant's obligations under its existing guarantee. There is no reference to Mrs. Green's exercising its option to extend the lease; thus, it can hardly be surmised that the letter was sent in contemplation of such an action. Moreover, the contention that the defendant's reference to a "future transaction" referred to the extension of the lease term is at best speculation, which alone is not sufficient to overcome a motion for summary judgment. See *Escourse* v. *100 Taylor Avenue, LLC*, 150 Conn. App. 819, 829–30, 92 A.3d 1025 (2014). Accordingly, having concluded that the unambiguous language in the May 13, 1999 letter and the June 28, 2007 letter did not change the defendant's obligations under the November 7, 1997 guarantee, we further conclude there is no genuine issue of material fact as to whether the defendant's guarantee covered the optional extension period of the lease agreement.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Mrs. Green's of Fairfield, Inc., Planet Organic Holding Corp. and Planet Organic Health Corp. also were named as defendants in the underlying action. They were defaulted for failure to plead and have not participated in the present appeal. Accordingly, we refer to United Natural Foods, Inc., as the defendant.

[2] The original fifteen year term, therefore, was set to expire on May 1, 2012.

[3] The May 13, 1999 letter provides in relevant part: "Reference is made to . . . a certain [l]ease [a]greement dated as of May 24, 1996 . . . between [the plaintiff] and [National Retail], as assignee of Sweetwater Associates, Inc. . . . and . . . a certain [a]ssignment of [the] [l]ease of even date . . . relating to the assignment of the [l]ease to Mrs. Green's . . . . [The defendant] has guaranteed [National Retail's] obligations under the [l]ease. This letter will confirm the agreement of [National Retail] and [the defendant] that, in order to induce [the plaintiff] to execute a certain [c]onsent to [a]ssignment of even date . . . [National Retail] and [the defendant] expressly agree that [the plaintiff's] consent to the [a]ssignment shall not release [National Retail] or [the defendant] from any obligation with respect to the [l]ease, except to the extent paid or performed by [the] [a]ssignee."

[4] Section 15.2 of the lease provides in relevant part: "If [t]enant is a corporation . . . and if at any time after execution of this [l]ease any part of all of the corporate shares shall be transferred by sale, assignment, bequest, inheritance, operation of law or other disposition . . . so as to result in a change in the present control of said corporation by the person or persons now owning a majority of said corporate shares, [t]enant shall give the landlord notice of such event within fifteen (15) days prior to the date of such transfer. In such event and whether or not [t]enant has given such notice, [l]andlord may elect to terminate this [l]ease at any time thereafter by giving [t]enant notice of such election, in which event this [l]ease and the rights and obligations of the parties hereunder shall cease as of a date set forth in such notice which date shall not be less than sixty (60) days after the date of such notice."

[5] Section 21.1 of the lease provides in relevant part: "At the expiration of the original [t]erm hereof, and provided [t]enant is not in material default of its part hereunder, [l]andlord hereby grants to [t]enant an option to renew this [l]ease for three (3) separate additional five (5) year [t]erms . . . commencing at the expiration of the [i]nitial [t]erm. Tenant must notify [l]andlord of its intention to renew under this option at least six (6) months prior to the expiration of the [i]nitial [t]erm."

Further, the lease provided that the terms of the option period would be the same as the terms for the original lease period, with the exception of changes to the yearly rental cost.

[6] Mrs. Green's also failed to pay the rent for each of the months remaining

on the lease until its expiration on April 30, 2017.

[7] On January 2, 2018, the plaintiff filed a motion to reargue, which was summarily denied by the court on January 5, 2018.

[8] In its principal brief to this court, the plaintiff acknowledged that "[t]he first guarantee, dated November 7, 1997, like in *Village Linc Corp.* . . . did refer only to the initial term of the lease. . . . The [November 7, 1997 guarantee] stated the commencement date and the expiration date of the lease." At oral argument, however, the plaintiff's counsel claimed that the November 7, 1997 guarantee itself was not expressly limited to the original lease term. To the extent that the plaintiff takes the position that the November 7, 1997 guarantee is ambiguous with respect to whether the parties intended it to cover the optional extension period, we decline to address this contention, as it runs afoul of our well settled rule that "claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court." (Internal quotation marks omitted.) *Bridgeport* v. *Grace Building, LLC*, 181 Conn. App. 280, 294, 186 A.3d 754 (2018).