******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CITY OF BRIDGEPORT *v.* GRACE BUILDING, LLC
(AC 38174)

Sheldon, Elgo and Eveleigh, Js.

*Syllabus*

The plaintiff city sought, by way of summary process, to regain possession of certain premises that it had leased to the defendant for a term of ninety-eight years. The trial court denied the defendant's motion to transfer the matter from the Housing Session to the regular docket of the Superior Court. The defendant had claimed in the motion to transfer, inter alia, that good defenses existed to the plaintiff's action and that it wanted to conduct discovery. The defendant further asserted that the purpose of the lease agreement was to allow the defendant to purchase the premises without assuming liability for ground contamination to the property, and that certain of the more than $1 million that the defendant had invested in remediation efforts would be credited toward its back rent. Thereafter, the plaintiff filed an amended complaint in which it revised certain misstatements in its allegations, and the defendant filed an answer and special defenses in which it alleged, inter alia, that it had paid rent in the form of agreed upon repairs, cleanup and improvements to the property, and that ground contamination on the property necessitated remediation. Prior to the trial date, the court granted a motion to withdraw from representation that was filed by the defendant's counsel and admonished the defendant that it could be defaulted if it appeared for trial without counsel. The defendant thereafter appeared for trial without counsel, and the court rendered a judgment of default for failure to appear. The court thereafter denied the defendant's motion to open the default judgment and subsequently issued an articulation of its decision in which it stated, inter alia, that it had denied the motion to open because of dilatory delays by the defendant and that the defendant had not been prevented from obtaining counsel by reason of mistake, accident or other reasonable cause. *Held*:

1. The plaintiff could not prevail on its claim that because the defendant had been evicted from and no longer was in possession of the property, the appeal was moot: although, generally, an appeal becomes moot when, at the time of the appeal, an appellant no longer is in possession of the premises, that rule does not apply when an appellant can demonstrate that the judgment has potentially collateral consequences to the defendant, including the impairment of a party's ability to seek a writ of restoration, and because the defendant sought restoration of its tenancy rights under the lease agreement, an avenue of practical relief remained viable in the form of a writ of restoration, which is available in summary process actions to parties who have been wrongly dispossessed of leased property, provided that the term of the lease agreement has not yet expired; accordingly, given that the term of the parties' lease agreement was for ninety-eight years and, thus, has not expired, the appeal was not moot.

2. The trial court abused its discretion in denying the defendant's motion to open the default judgment, as the defendant provided sufficient information to satisfy the statutory (§ 52-212 [a]) standard for opening a default judgment, which required a showing that a good defense existed at the time that the default judgment was rendered and that the defense was not raised by reason of mistake, accident or other reasonable cause: the defendant asserted that good defenses existed to the plaintiff's action and the trial court did not conclude that the defendant failed to establish the existence of a good defense at the time of the default judgment; moreover, that court's findings that the defendant had engaged in purely dilatory delays and that no reasonable cause existed for the defendant's failure to appear for trial with counsel were clearly erroneous, as the record indicated, inter alia, that a six month delay at the outset of this litigation was occasioned by the plaintiff's failure to promptly amend its patently defective complaint, the defendant immediately sought to procure new counsel after the trial court granted the motion of its attorney to withdraw, new counsel did appear at the courthouse to try

to negotiate with the plaintiff and did not advise the defendant of his unwillingness to file an appearance until the day before trial, the plaintiff's counsel confirmed to the trial court that the defendant's new counsel had attempted to conduct negotiations with him before the court rendered the default judgment, an affidavit filed by the defendant's president, which accompanied the motion to open, chronicled those events, which were unrebutted at the hearing on the motion to open, and the record indicated that the defendant had claimed from the onset of the litigation that good defenses existed to the plaintiff's action.

Argued January 16—officially released April 24, 2018

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Fairfield, Housing Session, where the defendant was defaulted for failure to appear; thereafter, the court, *Rodriguez, J.*, rendered judgment of possession for the plaintiff, from which the defendant appealed to this court; subsequently, the court, *Rodriguez, J.*, denied the defendant's motion to open the judgment, and the defendant filed an amended appeal with this court; thereafter, the court, *Rodriguez, J.*, issued an articulation of its decision. *Reversed; further proceedings*.

*Gary A. Mastronardi*, for the appellant (defendant).

*Russell D. Liskov*, associate city attorney, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, Grace Building, LLC,[1] appeals from the judgment of the trial court denying its motion to open the default judgment rendered in favor of the plaintiff, the city of Bridgeport. On appeal, the defendant claims that the court abused its discretion in so doing. We agree and, accordingly, reverse the judgment of the trial court.

The plaintiff commenced this summary process action against the defendant on October 22, 2014. In its complaint, the plaintiff alleged that the parties entered into an oral lease agreement in February, 2011, regarding real property located at 560 North Washington Avenue in Bridgeport (property) owned by the plaintiff. The plaintiff alleged that the agreement was for the term of one year and obligated the defendant to pay it "$70,000 in a lump sum and $20,000 in a lump sum in August, 2012." The complaint further alleged that the defendant had failed to make those payments in accordance with the oral agreement. On November 6, 2014, the defendant filed an answer, in which it denied the substance of the plaintiff's allegations. More specifically, the defendant alleged that the parties had entered into a written lease agreement on August 18, 2010, for a term of ninety-eight years. The defendant further claimed that the payment schedule alleged in the plaintiff's complaint "does not conform to the terms of the written lease agreement." The defendant also raised three special defenses, all of which pertained to remediation of the property.[2] On November 20, 2014, the defendant filed an amended answer and special defenses, wherein it pleaded, in addition to the aforementioned allegations, that "[d]eductions in rent have not been credited contrary to prior agreement" of the parties.

On January 5, 2015, the defendant filed a motion to transfer the matter from the Housing Session to the regular docket of the Superior Court pursuant to Practice Book § 24-21, asserting that "good defenses exist in this matter," including estoppel, unconscionability, and breach of the covenant of good faith and fair dealing. That motion further stated that the defendant "wishes to utilize the discovery process. The defendant wishes to be able to exercise [its] right to a trial by jury. And the defendant wishes to preserve [its] right to the appellate process, all of which may be had by the granting of this motion."

While the motion to transfer was pending, the court scheduled a trial for February 13, 2015. On January 29, 2015, the defendant filed a motion for a continuance with the consent of the plaintiff due to ongoing discussions between the parties about a possible resolution to the dispute. That motion was granted, and a new trial date was set for March 13, 2015. On February 11, 2015, the defendant filed a second motion for a continu-

ance with the consent of the plaintiff because the parties were "negotiating a settlement." That motion was granted, and a new trial date was set for March 27, 2015. On March 10, 2015, the defendant filed a third motion for a continuance with the consent of the plaintiff because the parties were "discussing resolution" of their dispute. That motion was granted, and a new trial date was set for May 1, 2015.

On April 30, 2015, the plaintiff filed an objection to the defendant's motion to transfer. In its objection, the plaintiff argued that transfer was unnecessary because "the Housing Session is a full service branch of the Superior Court and is completely and fully equipped and competent to handle such a matter."

The court held a hearing on the defendant's motion to transfer on May 1, 2015. At that hearing, the defendant argued that this case involved a lengthy "lease option agreement [whose] purpose . . . was to . . . allow [the defendant] to purchase the property while not assuming liability for ground contamination to the property . . . ." The defendant emphasized that "there are a lot of complicated issues in which [the defendant had] a lot of back and forth with the [plaintiff]. A lot of problems concerning the property in which [the defendant] relied on or understood that certain amounts of [its] investment in the property would be credited toward [its] back rent. [The defendant has] invested in excess of a million dollars into the property. . . . [G]iven the issues involved here, we feel this would be more properly transferred to the regular civil docket." In response, the plaintiff again argued that "this Housing Session is capable of resolving all issues that we have . . . ." Significantly, the plaintiff at that time stated that "if [the defendant] wants depositions, notice them, we'll be there. If [the defendant] wants discovery, file them, we'll answer the questions. . . . If [the defendant] needs time to do certain things, I'll give [it] the time [it] needs. . . . If [it] wants to do depositions, I'll give [it] whatever time [it] needs. If [it] wants to file interrogatories . . . file them. We'll answer them. Not a problem." The court then denied the defendant's motion to transfer and the proceeding adjourned.

That afternoon, the plaintiff filed an amended complaint in which it acknowledged the existence of a written agreement, as first alleged by the defendant in its original answer filed almost six months earlier. That amended complaint alleged that the defendant, on August 18, 2010, entered into a written lease agreement (agreement) regarding the property. Appended to that pleading was a copy of the agreement signed by both parties. Pursuant thereto, the defendant agreed to pay the sum of $300,000 in four installments in exchange for a lease of ninety-eight years, as well as an option to purchase. An initial payment of $20,000 was due "[a]t the [c]losing"; a second payment of $10,000 was due

two months after the date of the closing; $70,000 was due six months after the date of closing; and $200,000 was due twelve months after the date of closing.[3] The complaint further alleged that although the defendant "uses and occupies the [property] as agreed in the [agreement]," it had failed to make the payments specified therein.

On May 4, 2015, the defendant filed an answer to the plaintiff's amended complaint, in which it denied that it had failed to make the required payments. Rather, the defendant alleged that "[r]ent was paid in the form of *agreed upon* repairs, cleanup, and/or improvements to the property." (Emphasis added.) The defendant at that time also raised eight special defenses that primarily concerned the defendant's allegations of "ground contamination" on the property that necessitated remediation.[4]

The court thereafter scheduled a trial for May 15, 2015. On May 11, 2015, the defendant filed a motion for a continuance with the consent of the plaintiff because "the parties have agreed to a sixty day continuance for completion of discovery." That motion was granted, and a new trial date was set for June 19, 2015.

On June 15, 2015, the defendant filed a motion for a continuance with the consent of the plaintiff. In that motion, the defendant's counsel, Attorney Robin H. Lasky, indicated that the reason for the request was that discovery was not complete. As Lasky stated: "My client has been unavailable traveling out of state for the last two weeks. I have not yet received a response to my request for production which the [plaintiff's] attorney has asked me to anticipate receiving this week. The plaintiff has agreed to a continuance until July 17, 2015, and I humbly request the court grant this motion so that I may have sufficient time to review requested [materials] and confer further with my client."[5] The court denied that request on June 15, 2015.

On June 17, 2015, Lasky filed a motion to withdraw his appearance due to "a breakdown in communication" with his client and an "[i]rreconcilable disagreement as to the best legal strategy . . . ." The court held a hearing on June 19, 2015, at which it heard from Lasky and Femi Olowosoyo, the owner and principal of the defendant. At that time, Olowosoyo communicated his displeasure with Lasky and requested a continuance of eight weeks to enable him to secure new counsel. In response, the plaintiff's attorney stated that he "would like the case to be set down for July 17. I think that's more than enough time for this gentleman to get a lawyer. You can go out the door and knock a tree and knock six lawyers out of the tree with a stick for a case." When the plaintiff's counsel then remarked that "the case has been pending since October of 2014," Olowosoyo stated: "I've never asked for any time to find an attorney, Your Honor. This is the first time

I'm asking, and I'm hoping that the court will find it reasonable enough to grant [the request] . . . ."

The court granted a continuance, albeit one four weeks less than Olowosoyo had requested. As it stated: "I'm going to grant the continuance request. I'm going to grant the motion of [Lasky] to withdraw and give you the opportunity to hire a new lawyer. But let me be very clear about this . . . you need to have an attorney because you can't represent your [limited liability company]. On July 17, [2015], which is . . . when this case is scheduled next, if you're not here with an attorney, then a default can enter against you, and [y]our company will lose the case because you cannot represent [the defendant] . . . ." Olowosoyo confirmed that he understood the court's directive.

The court then scheduled the case for trial on July 17, 2015. On that date, Olowosoyo appeared before the court without counsel. The plaintiff's attorney at that time informed the court that Olowosoyo "did have a lawyer here today but he would not enter an appearance on [the defendant's] behalf." Accordingly, the plaintiff asked the court to render a default judgment. The court then addressed Olowosoyo, stating: "Sir, I've had a conversation with you in the past. I'm really not even permitted to allow you to address the court because you're not an attorney and you're not a defendant or a litigant in this case. And today's date was a final date, so a default will enter with regard to the [defendant]." With that, the proceeding adjourned. Later that day, the court issued a notice that the defendant had been defaulted for failure to appear.

Six days later, Attorney David E. Dobin of the law firm of Cohen and Wolf, P.C., filed an appearance on behalf of the defendant. At that time, the defendant commenced an appeal from the default judgment with this court.

On August 7, 2015, the defendant filed with the trial court a motion to open the default judgment,[6] which alleged that reasonable cause and good defenses to the plaintiff's action existed, as specified in the defendant's May 4, 2015 answer and special defenses. The defendant further alleged that "between June 19, 2015, the date [Lasky] withdrew his appearance, and July 17, 2015, the date of [the default judgment], defendant was diligent in searching for replacement counsel. Indeed, by June 22, 2015, defendant had dropped off the file related to this case with Attorney Brendan O'Rourke, who held onto the file for several weeks before telling defendant, *for the first time*, on July 16, 2015—one day before the scheduled trial date—that he would attend court with defendant but *not* file an appearance, severely prejudicing the defendant." (Emphasis in original.)

A sworn affidavit from Olowosoyo accompanied the defendant's motion to open the default judgment, in

which Olowosoyo affirmed that he was the owner and president of the defendant. Olowosoyo stated in relevant part that the property "was in a dilapidated condition and the [p]laintiff was interested in the [d]efendant's rehabilitation of the [property]. . . . [B]oth before and after the execution of the [agreement], representatives of the [p]laintiff, including Bill Finch, Bill Coleman, and Max Perez represented to me that expenditures made to improve the [property] including cleaning up the [property] prior to execution of the [agreement] and fixing damage to the [property] caused by a tornado, would be credited towards the rent due under the [agreement], that real property taxes would be abated for [eight] years and that additional amounts spent by [d]efendant to repair the tornado damage would be credited towards future transactions between [the parties]. In reliance on those representations, [d]efendant did not pay the rent that that [agreement] states was due . . . . In further reliance on the [p]laintiff's representations, since 2010, [d]efendant has incurred approximately $2 million in expenses in improving the [property]."

With respect to his efforts to secure legal counsel, Olowosoyo stated in the affidavit that he first spoke with O'Rourke on June 19, 2015, and "dropped off the file at [his] office" on June 22, 2015. The affidavit states that Olowosoyo thereafter spoke with O'Rourke on several occasions about the case, and that O'Rourke informed him that O'Rourke had "reached out" to the plaintiff's counsel on the defendant's behalf and "was waiting to hear back." Olowosoyo then stated that "[o]n July 16, I spoke with [O'Rourke]. The [p]laintiff's counsel called him while he was on the phone with me to discuss the case. [O'Rourke] called me back to let me know that the case was going to go forward the next day and for the first time, told me that he would only be able to go with me to court as an advisor, that he wouldn't be able to enter an appearance because that would hurt my case as he was not prepared and he was afraid the judge might not grant [a] continuance. . . . On July 17, [O'Rourke] attended court with me. However, he did not file an appearance on that date and the court that day entered a default judgment for failure to appear."

The court heard argument on the motion to open on August 10, 2015. At that time, the plaintiff's counsel, Attorney Russell D. Liskov, confirmed that O'Rourke had in fact appeared at the courthouse with Olowosoyo on July 17, 2015. As Liskov stated: "He came and spoke to me to try and negotiate with me, but I wasn't negotiating with him without an appearance in the file." When his negotiation attempts proved unsuccessful, Liskov stated, O'Rourke "left before you opened court . . . ." Those representations are consistent with Liskov's statement at the outset of the July 17, 2015 proceeding that Olowosoyo "did have a lawyer here today but he

would not enter an appearance on [the defendant's] behalf." In support of the motion to open the default judgment, the defendant's counsel reiterated the efforts made by Olowosoyo to secure legal counsel for the July 17, 2015 proceeding, as well as the defendant's position that reasonable cause existed for the nonappearance of counsel and that good defenses existed to the plaintiff's claims. When that hearing concluded, the court summarily denied the motion to open. The relevant portion of the August 10, 2015 judgment file states only that "[t]he court, having heard the parties, finds the issues for the plaintiff."[7]

On September 21, 2015, the defendant filed a notice requesting a statement of decision by the trial court. The record before us does not contain any response to that request. The defendant thereafter filed a motion for articulation with the trial court, in which it asked the court to articulate "the factual and/or legal basis for its August 10, 2015 [judgment] . . . denying the defendant's motion to open default. Without said articulation, an adequate record for appellate review cannot be provided by the [defendant] . . . ."[8] By order dated December 14, 2016, the trial court summarily denied that request.

In response, the defendant filed a motion for review with this court, in which it sought an articulation of the court's August 10, 2015 oral decision denying the motion to open. On March 27, 2017, this court granted that motion and ordered the trial court to "articulate the factual and legal bases for its August 10, 2015 order denying the defendant's motion to open the judgment upon default."

On April 24, 2017, the trial court issued its articulation. It stated: "This is a summary process matter that commenced [on] October 22, 2014. The matter was assigned an unusually high number of seven trial dates. On the sixth date, Mr. Olowosoyo relieved his attorney of his representation and the defendant was given approximately four weeks to July 17, 2015, to obtain new counsel. The defendant was admonished that a default would enter if attorney representation wasn't achieved by July 17. On July 17, 2015, the defendant appeared sans counsel. This is a commercial eviction with a corporate defendant, and Mr. Olowosoyo could not represent the commercial tenant. A default and judgment of possession entered. On July 23 an appeal was filed. On August 7, 2015, a motion to open was filed, and the motion was denied after a hearing on August 10.

"The motion for articulation requests an articulation regarding the denial of the motion to open based on factual and legal basis. The trial court is vested with discretion to 'determine whether there is a good and compelling reason for its modification or vacation.' . . . *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 809,

695 A.2d 1010 (1997). Practice Book § 17-43 states that a motion to open must allege [that] a good defense exists and that the defendant was prevented by mistake, accident or other reasonable cause from appearing. The court finds that that situation did not exist here. The court finds that the motion to open was denied due to the dilatory delays of the defendant. This is a summary process action for nonpayment of rent that commenced on October 22, 2014. An amended answer with special defenses was filed on May 4, 2015. This matter has had numerous continuances and delays. The defendant was notified on June 19, 2015, that the July 17, 2015 trial date was a final date and of the consequences that would follow if he did not obtain attorney representation. The assertion that Mr. Olowosoyo had an attorney on July 17 who did not enter an appearance does not comply with the court's June 19, 2015 order. Nor does the assertion create a situation where he is prevented by mistake, accident or other reasonable cause from appearing."

I

As a preliminary matter, we address the plaintiff's assertion at oral argument before this court that the present appeal is moot. The following undisputed facts are relevant to that contention. Following the commencement of this appeal, the plaintiff filed a motion to terminate the automatic appellate stay, claiming that the appeal was frivolous and taken only for the purpose of delay. The trial court granted that motion over the defendant's objection, and the defendant did not file a motion for review of that order pursuant to Practice Book § 66-6. The plaintiff then filed an application for an execution for possession, which the trial court clerk issued on November 2, 2015.

This court subsequently ordered the parties to submit simultaneous memoranda of law addressing "whether the defendant is still in possession of the property and, if not, whether the appeal has become moot as a result of the defendant vacating the property." The parties complied with that order and, in their respective memoranda, acknowledged that the defendant had been evicted from the property and no longer was in possession thereof.[9] The parties nevertheless disagreed as to whether that development rendered the present appeal moot.

On March 27, 2017, this court declined to dismiss the defendant's appeal on the ground of mootness. Rather, we marked the matter "off without prejudice to the parties briefing the mootness issue in their briefs on the merits." In their subsequent appellate briefs, neither the plaintiff nor the defendant addressed the issue of mootness. Nevertheless, at oral argument before this court on January 16, 2018, the plaintiff's counsel remarked, at the very end of his argument, that the present appeal was moot. In response, the defendant's

counsel began his rebuttal by noting that the plaintiff's mootness argument was a "surprise" to him since that issue had not been briefed by the parties. The defendant's counsel then reiterated his position, originally set forth in the defendant's March 17, 2017 memorandum of law to this court, that the general rule of mootness does not apply because adverse collateral consequences result from the judgment of possession.

We normally decline to review claims asserted for the first time at oral argument, as it is well established that "claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court." *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 172 Conn. App. 160, 171 n.19, 159 A.3d 684, cert. denied, 326 Conn. 901, 162 A.3d 724 (2017). That precept does not apply when the claim is one of mootness, which implicates the subject matter jurisdiction of this court and thus "may be raised at any time . . . ." *State* v. *Charlotte Hungerford Hospital*, 308 Conn. 140, 143, 60 A.3d 946 (2013). Moreover, the parties already have submitted written memoranda of law to this court outlining their respective positions on the issue. Therefore, despite the plaintiff's belated assertion at the close of its oral argument, we address the merits of that claim.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . A case is considered moot if [the] court cannot grant the appellant any practical relief through its disposition of the merits . . . ." (Citations omitted; internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Mendez*, 320 Conn. 1, 6, 127 A.3d 994 (2015). "In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *Middlebury* v. *Connecticut Siting Council*, 326 Conn. 40, 54, 161 A.3d 537 (2017). Our review of the question of mootness is plenary. *State* v. *Rodriguez*, 320 Conn. 694, 699, 132 A.3d 731 (2016).

"Summary process appeals are particularly susceptible to becoming moot upon some action taken by the parties." *Housing Authority* v. *Lamothe*, 225 Conn. 757, 763, 627 A.2d 367 (1993). As a general matter, this court has concluded that an appeal has become moot when, at the time of the appeal, an appellant no longer is in possession of the premises. See, e.g., *Iacurci* v. *Wells*, 108 Conn. App. 274, 276–83, 947 A.2d 1034 (2008) (concluding appeal was moot when defendants "relinquished possession of the leased property" and "have

failed to bring to our attention any adverse collateral consequences that will befall them"); *Cheshire* v. *Lewis*, 75 Conn. App. 892, 893, 817 A.2d 1277 (dismissing appeal as moot where tenant vacated property following trial court termination of stay), cert. denied, 264 Conn. 905, 826 A.2d 177 (2003); *Castle Apartments, Inc.* v. *Pichette*, 34 Conn. App. 531, 533–34, 642 A.2d 57 (1994) (dismissing appeal where tenant vacated property and did not raise right to possession as issue on appeal).

As our Supreme Court has explained, that general rule does not apply when an appellant can demonstrate that "the judgment has potentially prejudicial collateral consequences to the defendant." *Housing Authority* v. *Lamothe*, supra, 225 Conn. 765; see also *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 548, 920 A.2d 316 (2007) ("[o]ur Supreme Court . . . has allowed us to retain jurisdiction where the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, even though developments during the pendency of the appeal would otherwise render it moot" [internal quotation marks omitted]). Such collateral consequences include the impairment of a party's ability to seek a writ of restoration, which allows "a tenant wrongly evicted to be restored to the premises . . . ." *Housing Authority* v. *Lamothe*, supra, 764. In its March 17, 2017 memorandum of law to this court, the defendant claimed such an impairment.

Almost two centuries ago, this state's highest court recognized that a party to a summary process action that wrongly is dispossessed of leased property "is clearly entitled" to "a writ restoring him to the possession" thereof, provided that the term of the lease "has not yet expired." *Du Bouchet* v. *Wharton*, 12 Conn. 532, 539–40 (1838); accord *Evergreen Manor Associates* v. *Farrell*, 9 Conn. App. 77, 78, 515 A.2d 1081 (1986) ("[w]hile a writ of restoration may issue upon a reversal of a summary process judgment, it can only issue if the lease has not expired by its terms"). As the Supreme Court observed, "courts have been in the habit of awarding such writs . . . ." *Du Bouchet* v. *Wharton*, supra, 540. "If therefore, the tenant has been [wrongly] dispossessed of his property, both justice and authority require, that he be restored." Id., 539.

Particularly relevant to this appeal is *Yankee Sailing Co.* v. *Yankee Harbor Marina, Inc.*, 5 Conn. App. 153, 154, 497 A.2d 93 (1985), which involved "the use of a building" by certain tenants that ultimately were evicted from the property. Like the defendant in this case, the tenants in *Yankee Sailing Co.* "did not pay rent for the use and occupancy of the building but, instead, compensated the landlords for the use of the building by making improvements to the property under an alleged oral agreement." Id. A summary process action followed, at the conclusion of which the trial court "awarded the landlords immediate possession." Id., 155.

This court thereafter concluded that the tenants' appeal was moot. In so doing, we noted that "a writ of restoration may issue upon a reversal of a summary process judgment . . . ." (Citation omitted.) Id., 157, citing *Du Bouchet* v. *Wharton*, supra, 12 Conn. 539. We further emphasized that "such a writ can only issue if the lease has not expired by its terms." *Yankee Sailing Co.* v. *Yankee Harbor Marina, Inc.*, supra, 157. Because there was no lease between the parties in that case, this court concluded that no practical relief could be granted, rendering the appeal moot. Id.

By contrast, the defendant in the present case expressly has indicated that it "seeks restoration of its tenancy rights under the [agreement] in order to allow it to reap the benefits of its substantial monetary investment . . . ."[10] A copy of that agreement is appended to the plaintiff's amended complaint. Section 3.1 of the agreement states in relevant part that "[t]he term of this Lease shall be for a period of ninety-eight (98) years . . . ." Because ninety-eight years plainly have not passed since the parties entered into that agreement in 2010, an avenue of practical relief remains viable under Connecticut precedent, in the form of a writ of restoration. See *Du Bouchet* v. *Wharton*, supra, 12 Conn. 539–40; *Yankee Sailing Co.* v. *Yankee Harbor Marina, Inc.*, supra, 5 Conn. App. 157. We therefore conclude that the present appeal is not moot and turn our attention to the defendant's claim.

II

The defendant contends that the court improperly denied its motion to open the default judgment. "To open a judgment pursuant to Practice Book § 17-43 (a) and General Statutes § 52-212 (a), the movant must make a two part showing that (1) a good defense existed at the time an adverse judgment was rendered; and (2) the defense was not at that time raised by reason of mistake, accident or other reasonable cause. . . . The party moving to open a default judgment must not only allege, but also make a showing sufficient to satisfy [that] two-pronged test . . . . [B]ecause the movant must satisfy both prongs of this analysis, failure to meet either prong is fatal to its motion." (Internal quotation marks omitted.) *Little* v. *Mackeyboy Auto, LLC*, 142 Conn. App. 14, 18–19, 62 A.3d 1164 (2013).

Our review of a ruling on a motion to open a default judgment is governed by the abuse of discretion standard. *Ruddock* v. *Burrowes*, 243 Conn. 569, 571 n.4, 706 A.2d 967 (1998). As this court has observed, "we review the court's determination to deny [a defendant's motion] to open the default judgment for a clear abuse of discretion. . . . The court's discretion, however, is not unfettered; it is a legal discretion subject to review. . . . [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law

and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant [its] day in court." (Citations omitted; internal quotation marks omitted.) *Multilingual Consultant Associates, LLC* v. *Ngoh*, 163 Conn. App. 725, 735, 137 A.3d 97 (2016). With that standard in mind, we turn to the defendant's claim.

A

We begin by noting that the court did not determine, in either its August 10, 2015 oral ruling or its April 24, 2017 articulation, that the defendant had failed to demonstrate the existence of a good defense, consistent with the first prong of the standard set forth in § 52-212 (a). See *Woodruff* v. *Riley*, 78 Conn. App. 466, 471, 827 A.2d 743 (although defendant "asserted that she had a good defense . . . [the trial] court made no finding in that regard"), cert. denied, 266 Conn. 922, 835 A.2d 474 (2003). Rather, the court in its articulation concluded that the defendant had failed to satisfy the second prong of that standard.

The record in this case plainly indicates that, from the very onset of this litigation, the defendant has claimed that good defenses exist to the plaintiff's action. Those defenses were set forth in detail in the defendant's November 6, 2014 answer and special defenses, its November 20, 2014 amended special defenses, and its May 4, 2015 answer and special defenses to the plaintiff's May 1, 2015 amended complaint.[11] See footnotes 2 and 4 of this opinion. The present case thus is not one in which "the defendant did not present a defense that existed at the time of the rendition of the [default] judgment . . . ." *Pantlin & Chananie Development Corp.* v. *Hartford Cement & Building Supply Co.*, 196 Conn. 233, 241, 492 A.2d 159 (1985).

In its motion to open the default judgment, the defendant incorporated those defenses by reference, stating in relevant part: "At the time of the judgment, good defenses to the claims asserted by the [p]laintiff in this action existed, including lack of subject matter jurisdiction, the doctrine against inequitable forfeiture, and estoppel, as more particularly set forth in the amended answer and special defenses filed May 4, 2014 . . . and the affidavit of [Olowosoyo] in support of the motion to open attached hereto . . . ." In light of the foregoing, the court understandably did not conclude that the defendant had failed to establish the existence of a good defense at the time that the default judgment was rendered.

B

The critical question, then, is whether the court properly concluded that the defendant failed to raise those

defenses at the July 17, 2015 proceeding by reason of "mistake, accident or other reasonable cause . . . ." General Statutes § 52-212 (a). As our Supreme Court has explained, "[i]n order to determine whether the court abused its discretion [in ruling on a motion to open], we must look to the conclusions of fact upon which the trial court predicated its ruling." *New England Floor Covering Co.* v. *Architectural Interiors, Inc.*, 159 Conn. 352, 358, 269 A.2d 267 (1970). Those factual findings are reviewed pursuant to the clearly erroneous standard; *Watkins* v. *Demos*, 172 Conn. App. 730, 735, 161 A.3d 655 (2017); under which a finding is "clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Nutmeg Housing Development Corp.* v. *Colchester*, 324 Conn. 1, 10, 151 A.3d 358 (2016).

In its articulation, the court expressly indicated that it denied the defendant's motion to open "due to the dilatory delays of the defendant."[12] The record before us belies such a finding. We note in this regard that when the plaintiff commenced this action in November, 2014, its complaint contained glaring misstatements that ultimately necessitated revision by the plaintiff. For example, the original complaint claimed that the parties had entered into an "oral" agreement for the lease of the property in "February, 2011." As the defendant pointed out in its November 6, 2014 answer and as confirmed in the agreement appended to the plaintiff's May 1, 2015 amended complaint, the parties actually entered into a written agreement on August 18, 2010. Moreover, the payment schedule alleged in the original complaint does not accurately reflect that contained in the parties' written agreement. Although the defendant immediately apprised the plaintiff of those fundamental defects in its complaint, the plaintiff did not amend its pleading until six months later on May 1, 2015. By contrast, the defendant filed its answer to the plaintiff's original complaint fifteen days after that complaint was filed, and filed its answer to the amended complaint three days after it was filed by the plaintiff. Unlike the plaintiff, therefore, the defendant cannot "be accused of delinquency in [its] pleadings." *Blue Cross/ Blue Shield of Connecticut, Inc.* v. *Gurski*, 49 Conn. App. 731, 737, 715 A.2d 819, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). Moreover, at no time in these proceedings has the plaintiff offered any "justification for [its] delay . . . in moving to amend the complaint." *Ruggiero* v. *Pellicci*, 294 Conn. 473, 478, 987 A.2d 339 (2010). The record demonstrates, in unequivocal fashion, that a one-half year delay was occasioned by the plaintiff's failure to amend its complaint in a prompt manner.

In addition, we note that, on January 5, 2015, the

defendant filed a motion to transfer the case to the regular docket of the Superior Court, claiming that "good defenses exist in this matter" and that the defendant wished to "utilize the discovery process" and "exercise [its] right to a trial by jury." The plaintiff did not file an objection to that request until almost four months later on April 30, 2015.[13] Once again, the plaintiff offered no justification or explanation for its delay in responding to the defendant's motion to transfer. The court ultimately denied the defendant's motion to transfer on May 1, 2015—only seventy-eight days prior to entry of the default judgment in this case.

Perhaps most astounding is the fact that, during that seventy-eight day period, the plaintiff agreed to afford the defendant a sixty day window to conduct discovery. At the May 1, 2015 hearing on the motion to transfer, the defendant had emphasized "the complexities of the case" and claimed that the present dispute was not "a traditional eviction matter" because "[g]ood defenses exist." In response, the plaintiff submitted that "[t]his Housing Session is capable of resolving all issues that we have . . . . You are a full service court and you're a Superior Court judge." The plaintiff then invited the defendant to conduct discovery and expressly indicated its acquiescence thereto. As Liskov stated, "[i]f [the defendant] wants discovery, file them, we'll answer the questions. . . . If [the defendant] needs time to do certain things, *I'll give [it] the time [it] needs. . . .* If [*it*] wants to do depositions, *I'll give [it] whatever time [it] needs.* If [*it*] wants to file interrogatories . . . file them. We'll answer them. Not a problem." (Emphasis added.) As reflected in the May 14, 2015 continuance request, the plaintiff thereafter "agreed to a sixty day continuance for completion of discovery." Although the court granted that continuance on May 14, 2015, the record contains no explanation as to why a trial was scheduled only thirty-six days later on June 19, 2015. In any event, the record indicates that, in May, 2015, the plaintiff agreed to postpone proceedings in this case to permit the defendant to conduct discovery until the middle of July, 2015. It bears repeating that the default judgment at issue in this appeal was rendered on July 17, 2015.

The record further indicates that the defendant did, in fact, conduct discovery during that period. The defendant served a request for admissions on the plaintiff; the plaintiff's answers thereto were filed with the court on June 15, 2015. On May 28, 2015, the defendant served a request for production of documents on the plaintiff. The plaintiff filed its "responses/objections" to that request with the court on June 16, 2015.

Furthermore, the record reflects that *every* motion for a continuance in this case was filed by the defendant with the consent of the plaintiff. As the judgment file that was filed with this court on August 21, 2015, notes, "[s]cheduled trials for the case on February 13, March

13, March 27, May 1 and May 15 were continued with the consent of all parties." Counsel for the defendant likewise stated at the hearing on the motion to open that those continuances all "were consented to continuances" and "were agreed to because there [were] continuing negotiations between the parties." The present case thus resembles *Stevenson* v. *Peerless Industries, Inc.*, 72 Conn. App. 601, 610, 806 A.2d 567 (2002), in which we observed that "this case does not involve a situation that resulted in considerable delay or inconvenience to the court or to opposing parties." As the defendant correctly noted at oral argument before this court, the plaintiff at no time in this case has alleged any prejudice resulting from either the granting of the aforementioned continuances or the granting of the defendant's timely motion to open.

The record also indicates that, on June 19, 2015, the court continued the matter to July 17, 2015, after granting Lasky's motion to withdraw as legal counsel due to what Lasky described as "a breakdown in communication" with his client and "[i]rreconcilable disagreement as to the best legal strategy . . . ." The defendant concedes that it did not appear with legal counsel at the July 17 proceeding. It nevertheless contends that the record does not support the court's finding that the defendant's failure to do so was for dilatory purposes. On the particular circumstances of this case, we agree.

At the June 19, 2015 proceeding, the court granted a continuance to afford the defendant the opportunity to secure new legal counsel. In the affidavit submitted with the defendant's motion to open, Olowosoyo averred that later on the day of June 19, 2015, he spoke with two attorneys, O'Rourke and Kevin Ahern, regarding legal representation for the defendant, and left a message for another, Attorney Edwin Farrow. Olowosoyo stated that he "dropped off the case file at [O'Rourke's] office" three days later and thereafter spoke with O'Rourke on multiple occasions about the case, with O'Rourke informing him that he had "reached out" to the plaintiff's counsel on the defendant's behalf and "was waiting to hear back."[14] Olowosoyo then stated "[o]n July 16, I spoke with [O'Rourke]. The [p]laintiff's counsel called him while he was on the phone with me to discuss the case. [O'Rourke] called me back to let me know that the case was going to go forward the next day and for the first time, told me that he would only be able to go with me to court as an advisor, that he wouldn't be able to enter an appearance because that would hurt my case as he was not prepared and he was afraid the judge might not grant [a] continuance. On July 17, [O'Rourke] attended court with me. However, he did not file an appearance on that date and the court that day entered a default judgment for failure to appear." (Footnote added.)

At the hearing on the motion to open, the plaintiff's

counsel confirmed the accuracy of those latter affirmations. Liskov informed the court that O'Rourke had in fact appeared at the courthouse with Olowosoyo on July 17, 2015. As Liskov stated: "He came and spoke to me to try and negotiate with me, but I wasn't negotiating with him without an appearance in the file." When his negotiation attempts proved unsuccessful, Liskov stated, O'Rourke "left before you opened court . . . ." Those representations are consistent with Liskov's statement at the outset of the July 17, 2015 proceeding that Olowosoyo "did have a lawyer here today but he would not enter an appearance on his behalf."

Although it is undisputed that the defendant did not appear with legal counsel at the July 17, 2015 proceeding, it is equally undisputed that Olowosoyo took steps to secure legal counsel for the defendant and that counsel did in fact appear at the courthouse on July 17, 2015, at which time counsel attempted to negotiate with the plaintiff on the defendant's behalf. Under those particular circumstances, and in light of the entire procedural history of this case as documented in the record before us, we conclude that the court's finding that the defendant had engaged in purely dilatory delays is clearly erroneous. A six month delay at the outset of this litigation was occasioned by *the plaintiff's* failure to promptly amend its patently defective complaint, and the plaintiff did not file its objection to the defendant's January 5, 2015 motion to transfer until nearly four months later. A mere seventy-eight days passed between the filing of the plaintiff's amended complaint on May 1, 2015, and the entry of the default judgment. Moreover, the plaintiff, on May 14, 2015, agreed to a sixty day period of discovery, and discovery thereafter was conducted between the parties. In such circumstances, the defendant's conduct cannot be described as dilatory in nature.

In its articulation, the court also found that no reasonable cause existed for the defendant's failure to appear with counsel at the July 17, 2015 proceeding. The defendant claims, and we agree, that the court's finding is clearly erroneous.

Significantly, this is not a case in which the defendant was notified of the withdrawal of its legal counsel and "the necessity of procuring substitute counsel" but thereafter "did nothing." *Testa* v. *Carrolls Hamburger System, Inc.*, 154 Conn. 294, 300, 224 A.2d 739 (1966). This also is not a case in which the defendant gave no explanation for its failure to appear at the proceeding in question. *Ryan* v. *Vera*, 135 Conn. App. 864, 870, 43 A.3d 221 (2012).

Moreover, this is not a case in which the defendant "made a conscious decision to ignore" the court's directive. *Dziedzic* v. *Pine Island Marina, LLC*, 143 Conn. App. 644, 652, 72 A.3d 406 (2013); see also *Woodruff* v. *Riley*, supra, 78 Conn. App. 471 ("[a] court should not

open a default judgment in cases where the defendants admit they received actual notice and simply chose to ignore the court's authority" [internal quotation marks omitted]). Rather, the record before us indicates that (1) soon after this action was commenced, the defendant filed a motion to transfer the case to the regular docket of the Superior Court because "good defenses exist in this matter"; (2) the defendant asserted several defenses to the action in its answer and special defenses to both the plaintiff's original complaint and its May 1, 2015 amended complaint; (3) the parties, on May 14, 2015, agreed to a sixty day period of discovery beginning on May 14, 2015, during which the defendant in fact engaged in discovery; (4) prior to the completion of that period of discovery, the court held a hearing on June 19, 2015, at which it granted Lasky's motion to withdraw and instructed the defendant to procure new counsel prior to the July 17, 2015 proceeding; (5) the defendant immediately consulted with O'Rourke, among other attorneys, later that same day; (6) O'Rourke took custody of the defendant's case file three days later and thereafter engaged in discussions with the plaintiff on behalf of the defendant; (7) O'Rourke did not advise the defendant of his unwillingness to file an appearance until the day before the July 17 proceeding; (8) O'Rourke at that time informed Olowosoyo that he would appear "as an advisor" but would not file an appearance "because that would hurt [the defendant's] case as he was not prepared and he was afraid the judge might not grant [a] continuance"; (9) the plaintiff's counsel later confirmed that O'Rourke did in fact appear at the courthouse on July 17, 2015, and attempted to conduct negotiations with him on the defendant's behalf; (10) at that July 17 proceeding, the plaintiff's counsel informed the court that O'Rourke had appeared at the courthouse with Olowosoyo "but he would not enter an appearance on [the defendant's] behalf"; (11) Olowosoyo appeared at the July 17 proceeding but was not permitted to address the court beyond identifying himself as the president of the defendant; (12) six days after the default judgment was rendered, new legal counsel filed an appearance for the defendant and commenced an appeal with this court; and (13) three weeks after the default judgment was rendered, the defendant filed a motion to open predicated on both the good defenses outlined in its answer and special defenses to the plaintiff's amended complaint and its efforts to secure new legal counsel for the July 17 proceeding. We note in this regard that Olowosoyo's sworn affidavit chronicles, in great detail, those efforts and O'Rourke's conduct in the days leading up to the July 17 proceeding, which claims went "unrebutted at the hearing" on the motion to open. *Carter* v. *D'Urso*, 5 Conn. App. 230, 235, 497 A.2d 1012, cert. denied, 197 Conn. 814, 499 A.2d 63 (1985).

The undisputed circumstances and the unique proce-

dural history of this case convince us that the court improperly found that the defendant had not established reasonable cause for its failure to appear with counsel at the July 17, 2015 proceeding. In this case, we are left with a firm conviction that a mistake has been made, and we are mindful that the trial court's discretion to open a default judgment must be "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant [its] day in court." (Internal quotation marks omitted.) *Multilingual Consultant Associates, LLC* v. *Ngoh*, supra, 163 Conn. App. 735. We therefore conclude that the defendant, in moving to open the default judgment, provided "sufficient information"; id., 737; to satisfy both prongs of the standard set forth in § 52-212 (a). Accordingly, the trial court abused its discretion in denying the defendant's motion to open the default judgment.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

[1] Although the defendant is identified in the summons and complaint as "Grace Building, LLC d/b/a Starlight Properties, Inc.," our Supreme Court has explained that "[t]he designation [doing business as] . . . is merely descriptive of the person or corporation who does business under some other name. . . . [I]t signifies that the individual is the owner and operator of the business whose trade name follows his, and makes him personally liable for the torts and contracts of the business . . . ." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 135, 947 A.2d 261 (2008); see also Black's Law Dictionary (9th Ed. 2009) p. 455 (explaining that dba abbreviation "signals that the business may be licensed or incorporated under a different name").

[2] In its November 6, 2014 special defenses, the defendant alleged that "1. [The plaintiff] retained responsibility for ground contamination to the property. As the [plaintiff] has not undertaken the remediation referenced in the lease, or otherwise, as agreed to, provided financing in the form of a low interest loan for this expense, [the defendant's] plans for development and the overriding purpose of the ninety-eight year lease [has] been frustrated. 2. [The defendant] has made substantial investment in cleanup and development of the property, such that a judgment granting plaintiff immediate possession of the property would be inequitable. 3. [The defendant] has incurred significant costs as a result of relying on repeated promises by representatives of the [plaintiff] that deductions in rent would be made for costs associated with cleanup and repair of preexisting tornado damage."

[3] The agreement defines "closing" as "the date upon which the parties execute this [a]greement, a fully-executed original thereof is delivered to [the defendant], and all of the other requirements for entry into the [agreement] have been met pursuant to the terms of the [agreement]."

[4] Specifically, the defendant alleged: "1. Enforcement of relevant provisions of the [agreement] . . . [is] unconscionable. 2. Relevant provisions of the [agreement] were formulated as a result of undue influence exercised over Defendant. 3. Plaintiff retained responsibility for ground contamination to the property in the form of facilitating remediation and/or arranging for low interest financing for this purpose. 4. As the remedial action plan for the ground contamination referenced in the [agreement] has not been executed or financed per the [agreement] between the parties, the overriding purpose of the [agreement] has been frustrated. 5. Defendant has detrimentally relied on promises made by Plaintiff and its representatives that investment made for cleanup and development of the property would be credited

toward rent due. 6. Defendant has detrimentally relied on promises made by Plaintiff that Plaintiff would arrange for low interest financing for the purposes of development and cleanup of the property. 7. Defendant has made substantial investment in cleanup and development of the property, such that a judgment granting Plaintiff immediate possession of the property would be inequitable. 8. Defendant has made substantial investment in reliance on repeated promises by Plaintiff and its representatives related to cleanup and repair of preexisting and/or subsequent damage to the property, such that a judgment granting Plaintiff immediate possession of the property would be inequitable."

[5] In its appellate brief, the plaintiff states that "[w]hile it is true that six (6) continuances were consented to by the [plaintiff], the last [continuance request on June 15, 2015 was] *not*." (Emphasis in original.) Nothing in the record substantiates that assertion, which is contrary to the content of the June 15, 2015 motion for continuance before us. The plaintiff did not file an objection to the continuance request, and it has not provided any documentation to support that assertion in the appendix to its appellate brief.

[6] That motion to open was filed three weeks after the default judgment was rendered, well within the four month limitation of General Statutes § 52-212 (a).

[7] On August 21, 2015, the defendant filed an amended appeal with this court, which indicated that the defendant also was appealing from the court's August 10, 2015 judgment denying the motion to open the default judgment.

[8] That motion was signed on behalf of the defendant by Attorney Gary A. Mastronardi, who filed an appearance on July 21, 2016. Approximately one month earlier, this court granted Dobin's motion to withdraw the appearance of Cohen and Wolf, P.C.

[9] Appended to the plaintiff's memorandum of law was an affidavit from Liskov, in which he indicated that the plaintiff enforced that execution of ejectment through service of process by a city sheriff in November, 2015, at which time the plaintiff "took possession of the premises in question."

[10] In that regard, we note the defendant's ancillary contention that, as a collateral consequence of the trial court decision, it will be deprived of any recourse for the "substantial monetary investment" it allegedly has made in the property if this appeal is dismissed as moot. In its March 16, 2017 memorandum of law to this court, the plaintiff noted that "the only relief that [the plaintiff] sought and received was possession of the property." In response, the defendant argues that "what is obviously at stake in this case is considerably more than just the adverse effect ordinarily suffered by a tenant in an eviction action where the tenant is merely deprived solely of the right to occupy the leased property. Here, the substantial sums advanced by [the defendant] in improving the [property] created legitimate, investment-backed, business expectations on the part of the defendant . . . of which the defendant stands to be deprived, without any fair opportunity to be heard, should this appeal be dismissed as moot." Should this court reverse the judgment of the trial court denying its motion to open, the defendant argues, it then would have the opportunity to have those allegations decided on their merits. Such allegations were pleaded in the defendant's answers and special defenses to the plaintiff's original and amended complaints. See footnotes 2 and 4 of this opinion.

[11] In its answer to the amended complaint, the defendant alleged that payments required under the agreement were made "in the form of agreed upon repairs, cleanup, and/or improvements to the property." In both its special defenses and its motion to open, the defendant further alleged that it had made substantial investments in accordance therewith. In his affidavit appended to the defendant's motion to open, Olowosoyo stated that "[i]n further reliance on the [p]laintiff's representations, since 2010, [d]efendant has incurred approximately $2 million in expenses in improving the [property] . . . ."

The record before us also indicates that although payments of $70,000 and $200,000 were due under § 4.1 (c) and (d) of the agreement in February and August, 2011, respectively, the plaintiff made no demand for payment until 2014. For that reason, Olowosoyo stated in his affidavit appended to the motion to open that "[a]lthough the [agreement] states that rent was due . . . in February 2011 and August 2011, the plaintiff, consistent with [its assurances to the defendant], did not attempt to enforce the rent and tax terms of the [agreement] until a [n]otice of [d]efault was sent in January 2014 . . . ."

[12] "Dilatory" is defined as "tending or intended to cause delay" and "characterized by procrastination." Merriam-Webster's Collegiate Dictionary (11th

Ed. 2003) p. 350. It frequently is utilized to describe deliberate conduct on the part of a litigant to delay or obstruct a court proceeding. See, e.g., *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 43, 664 A.2d 719 (1995); *State* v. *J.M.F.*, 170 Conn. App. 120, 132, 154 A.3d 1, cert. denied, 325 Conn. 912, 159 A.3d 230 (2017).

[13] At that time, the plaintiff still had not filed an amended complaint to rectify the fundamental deficiencies in its original complaint.

[14] At oral argument before this court, the plaintiff's counsel confirmed that he received such calls from O'Rourke on the defendant's behalf.

––––––––––––––––––––––––