******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## TOLLAND MEETINGHOUSE COMMONS, LLC *v.* CXF TOLLAND, LLC, ET AL.*

Superior Court, Judicial District of Tolland
File No. CV-19-6017308-S

Memorandum filed October 27, 2020

*Proceedings*

Memorandum of decision on plaintiff's motion for summary judgment and on defendant Peter A. Rusconi's motion for summary judgment. *Plaintiff's motion granted*; *defendant's motion denied.*

*Kurosh L. Marjani* and *Daniel B. Brill*, for the plaintiff.

*Matthew T. Wax-Krell* and *Denise Luccio*, for the defendants.

*Opinion*

FARLEY, J.

<u>MEMORANDUM OF DECISION</u>

The plaintiff, Tolland Meetinghouse Commons, LLC ("Tolland Meetinghouse"), has brought this action claiming breach of a commercial lease agreement by the defendant CXF Tolland, LLC, d/b/a Cardio Express ("Cardio Express"), and claiming breach of a guaranty agreement by the defendant Peter Rusconi. Tolland Meetinghouse and Rusconi have both moved for summary judgment. Tolland Meetinghouse's motion is granted as to both Rusconi and Cardio Express. Rusconi's motion is denied.

FACTS AND PROCEEDINGS

On May 14, 2007, a predecessor in interest to Tolland Meetinghouse entered into a commercial lease agreement with Cardio Express demising premises that were part of a shopping center called Meetinghouse Commons, to be used as an exercise facility and health club. The lease provided for a term of eleven years and six months, commencing on May 1, 2007, and terminating on October 31, 2018. Also in May, 2007, Rusconi, at the time a member of CXF Tolland, LLC, signed an agreement (the "guaranty agreement") dated May 10, 2007, unconditionally guaranteeing the performance of Cardio Express' obligations under the lease for a term of five years, a period that expired on May 1, 2012. In August, 2010, following Tolland Meetinghouse's succession to the original landlord's interests, the lease was amended ("first amendment of lease") to recognize that Tolland Meetinghouse was now the landlord, and the lease was ratified and remained in full force and effect. Thereafter, on May 1, 2012, the guaranty agreement expired by its own terms.

A ledger statement submitted in support of Tolland Meetinghouse's motion for summary judgment indicates that Cardio Express was current on its account as of August 5, 2014, two years after the original guaranty by Rusconi expired. The account was in arrears, however, throughout the rest of 2014, all of 2015, and into 2016. In March, 2016, Tolland Meetinghouse commenced eviction proceedings by serving Cardio Express with a notice to quit. In April, 2016, Tolland Meetinghouse and Cardio Express entered into a "Second Amendment to Lease" ("second amendment"). The purpose of this amendment was to restructure an arrearage under the lease, acknowledged at the time by Cardio Express to be $122,275.71. The notice to quit was revoked and the pending eviction thus avoided by means of the second amendment.

Under the second amendment to the lease, Tolland Meetinghouse agreed to reduce the amount of the arrearage to $100,000 to be paid in eighteen monthly

installments of $5555.55 through September, 2017, "conditioned on the Tenant's full compliance with the terms set forth herein." Upon any default in the payments or otherwise under the lease, the original amount of $122,275.71 would become due, subject to credit for any installment payments already made. Importantly, although Rusconi was not a party to the lease, he signed the second amendment as "guarantor" in addition to signing in his status as "member/manager" of Cardio Express. Paragraph 5 of the second amendment provides: "The Guarantor hereby reaffirms his obligations in respect to the terms of the Guaranty dated May 10, 2007, which Guaranty shall remain in full force and effect." Following the execution of the second amendment, Cardio Express made all eighteen of the $5555.55 payments called for in the agreement, although its account never achieved currency again. From June, 2018, through the end of the lease on October 31, 2018, Cardio Express made no payments under the lease as amended, and it held over in the premises until December 18, 2018. According to the ledger, at that time Cardio Express' account was in arrears $291,997.61. In this litigation, however, Tolland Meetinghouse has chosen not to pursue $7687.27 reflected in the ledger because it was not included in the $122,275.71 arrearage agreed upon between the parties in the second amendment. Tolland Meetinghouse has also credited a prorated share of rent for December, 2018, which is not reflected in the ledger. Thus, the amount sought by Tolland Meetinghouse is an arrearage of $276,552.77, an amount which includes rent and other charges for the month of November, 2018, and part of December, 2018, after the lease expired, totaling $42,412.63.

The principal dispute between the parties concerns the nature and extent of Rusconi's obligations as guarantor. Rusconi contests liability and has moved for summary judgment himself, based principally upon the argument that the original guaranty expired in 2012, and the 2016 second amendment did not create any new obligations beyond those set forth in the original guaranty agreement. Cardio Express acknowledges its default under the lease. As referenced above, Tolland Meetinghouse has supported its motion for summary judgment with evidence of the amounts owed under the lease. Cardio Express and Rusconi submitted no evidence concerning the amounts due. While Cardio Express does not contest liability it does contest the amount of damages sought by Tolland Meetinghouse and, without submitting any evidence contesting damages, requests that the court conduct a hearing in damages "so it may cross-examine the plaintiff's representative regarding the amount of claimed damages, including late fees, charges, and credits."

### DISCUSSION

"[S]ummary judgment shall be rendered forthwith if

the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 820–21, 116 A.3d 1195 (2015). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Id., 821.

"To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 228, 116 A.3d 297 (2015).

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Id., 498. "In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." *Connecticut Co.* v. *Division 425*, 147 Conn. 608, 616, 164 A.2d 413 (1960); *Schlicher* v. *Schwartz*, 58 Conn. App. 80, 85, 752 A.2d 517 (2000). "Every provision of the contract must be given effect if it can reasonably be done, because parties ordinarily

do not insert meaningless provisions in their agreements." *Connecticut Co.* v. *Division 425*, supra, 617.

"When there are multiple writings regarding the same transaction, the writings should be considered together to determine the intent of the parties." (Internal quotation marks omitted.) *Frantz* v. *Romaine*, 93 Conn. App. 385, 395, 889 A.2d 865, cert. denied, 277 Conn. 932, 896 A.2d 100 (2006). "[Guarantees] are . . . distinct and essentially different contracts; they are between different parties, they may be executed at different times and by separate instruments, and the nature of the promises and the liability of the promisors differ substantially . . . . The contract of the guarantor is his own separate undertaking in which the principal does not join." (Internal quotation marks omitted.) *1916 Post Road Associates, LLC* v. *Mrs. Green's of Fairfield, Inc.*, 191 Conn. App. 16, 23, 212 A.3d 744 (2019), quoting *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 675–76, 94 A.3d 622 (2014); see also *Wolthausen* v. *Trimpert*, 93 Conn. 260, 265, 105 A. 687 (1919) ("[a] guaranty is a collateral undertaking to pay a debt or perform a duty, in case of the failure of another person, who is in the first instance liable to such payment or performance" (internal quotation marks omitted)). When two agreements, however, are connected by reference and subject matter, both are to be considered in determining the real intent of the parties. See *Massaro* v. *Savoy Estates Realty Co.*, 110 Conn. 452, 459, 148 A. 342 (1930). "Where . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties." (Internal quotation marks omitted.) *Regency Savings Bank* v. *Westmark Partners*, 59 Conn. App. 160, 165, 756 A.2d 299 (2000), quoting *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 7, 110 A.2d 464 (1954).

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, supra, 252 Conn. 498. When considering a claim of ambiguity, the court does "not decide which party has the better interpretation, only whether there is more than one reasonable interpretation of the contract language at issue. If we conclude that the language allows for more than one reasonable interpretation, the contract is ambiguous . . . . Conversely, if the contract is unambiguous, its interpretation and application is a question of law for the court, permitting

the court to resolve a breach of contract claim on summary judgment if there is no genuine dispute of material fact." *Salce* v. *Wolczek*, 314 Conn. 675, 683, 104 A.3d 694 (2014).

Of principal concern to the parties is whether Rusconi's signature as "guarantor" on the second amendment, in addition to his separate signature on behalf of Cardio Express, along with the language of paragraph 5 of the second amendment, makes him personally liable for the amounts owed by Cardio Express under the lease. Paragraph 5 states that "[t]he Guarantor hereby reaffirms his obligations in respect to the terms of the Guaranty dated May 10, 2007, which Guaranty shall remain in full force and effect." Tolland Meetinghouse argues in support of its motion for summary judgment that this language clearly and unambiguously renews or reactivates the terms of the guaranty agreement to cover Cardio Express' lease obligations as of April, 2016, when the second amendment became effective. Rusconi, on the other hand, argues in opposition to Tolland Meetinghouse's motion and in support of his own motion that paragraph 5 clearly and unambiguously fails to impose any obligation upon him beyond the original obligations undertaken in the 2007 guaranty agreement. Under the terms of the original guaranty agreement, Rusconi had no obligations after May 1, 2012.

Rusconi argues it was clear under the guaranty agreement that it expired after five years and that paragraph 5 of the second amendment could not "magically resuscitate an expired guaranty." Acknowledging that Rusconi did "reaffirm" his expired guaranty obligations, Rusconi maintains that he was "reaffirming a nullity." Because it had expired it "could not 'remain' in full force and effect." Perhaps recognizing that the law of contracts presumes contract language is not a "nullity," Rusconi offers the "alternative argument" that he merely guaranteed the arrearage amount referenced in the second amendment. The arrearage payments were made in full and thus, Rusconi argues, he would still owe nothing to Tolland Meetinghouse. Rusconi's alternative argument is actually an alternative construction of the contract. At oral argument he maintained that both constructions of the contract were "reasonable." Rusconi's arguments, therefore, support a conclusion that the second amendment is ambiguous as it pertains to his personal obligations.[1]

Tolland Meetinghouse's argument that the meaning of paragraph 5 is clear and unambiguous is impaired by the choice of words in that paragraph. Specifically, the phrase "shall remain in full force and effect" would more clearly reflect the intent advocated by Tolland Meetinghouse if, for example, the agreement provided instead that the guaranty "shall be reinstated for the duration of the lease term." It is only by placing the

language into the context of the circumstances surrounding the second amendment that the meaning of paragraph 5 becomes clear. "The intention of the parties to a contract is to be determined from the language used *interpreted in the light of the situation of the parties and the circumstances connected with the transaction.*" (Emphasis added; internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990); *Connecticut Housing Finance Authority* v. *John Fitch Court Associates Ltd. Partnership*, 49 Conn. App. 142, 147, 713 A.2d 900, cert. denied, 247 Conn. 908, 719 A.2d 901 (1998). "The circumstances to be considered are those known to the parties when the [contract] was made." *Hatcho Corp.* v. *Della Pietra*, 195 Conn. 18, 20, 485 A.2d 1285 (1985). The surrounding circumstances in the present case are undisputed and, under the undisputed circumstances, there is only one construction of paragraph 5 that gives it any meaning.[2]

The arrearages that accumulated prior to the execution of the second amendment began accumulating after the original guaranty expired. They do not constitute obligations that were ever within the scope of the original guaranty agreement. Thus, by "reaffirming" his obligations under that agreement, Rusconi was not acknowledging a preexisting responsibility for the arrearages. Rusconi's argument that paragraph 5 may be read consistently with his position that he undertook no new obligations under paragraph 5, by applying it only to these prior arrearages, is not reasonable because it is inconsistent with the undisputed surrounding circumstances. Instead, the only reasonable construction of the portion of paragraph 5 where Rusconi "reaffirms his obligations in respect to the terms of the Guaranty dated May 10, 2007," is that the substantive terms of that agreement are incorporated into whatever is being agreed to in paragraph 5. Paragraph 5 subsequently provides that the May 10, 2007 guaranty, with those terms, "shall remain in full force and effect." In order for this phrase to have any practical meaning, it must refer to obligations under the Cardio Express lease as to which Rusconi had no responsibility under the original guaranty agreement, but which are now made subject to the terms of that guaranty.

Rusconi leans heavily on the provisions of paragraph 2 of the guaranty agreement that limit his guarantee obligations to the initial five years of the lease. Paragraph 2 of the guaranty agreement states that, "[e]ven if the Lease . . . is modified in any way, the obligations hereunder of the Guarantor shall terminate at the expiration of the initial five (5) years of the initial Lease term." It further provides: "In the event that any agreement or stipulation between Landlord and Tenant shall extend the time of performance . . . Guarantor shall continue to be liable upon this Guaranty, except that the obligations hereunder of Guarantor shall terminate at the expiration of the initial five years of the Lease

term." Paragraph 11 (j) repeats: "The term of this Guaranty Agreement shall be only for the initial first five years of the initial Lease term." Rusconi argues that any incorporation of the terms of the guaranty agreement into the second amendment must also incorporate these provisions and they clearly limit the term of the guaranty agreement to the initial five years of the lease. Any "reaffirmation" of the guaranty agreement also reaffirms this term limit, according to Rusconi.

These provisions of the original guaranty agreement clearly prevent modifications to the lease and any other agreements reached between Tolland Meetinghouse and Cardio Express in the second amendment from reinstating or otherwise impacting Rusconi's obligations under the guaranty agreement. They do not, however, prevent Rusconi himself from agreeing to modify, renew or reactivate his obligations as guarantor. The question is not whether the lease amendments revived his obligations as a guarantor, but whether by signing the second amendment as "guarantor" and agreeing to the provisions of paragraph 5, Rusconi agreed to revive his obligations as guarantor. Notably, the guaranty agreement does not specify any particular mechanism or other requirements necessary to form an amendment or modification of that agreement. Consequently, notwithstanding the term limitations contained in the original guaranty agreement, the question remains whether paragraph 5 of the second amendment clearly and unambiguously restored Rusconi to the position of guarantor of Cardio Express' obligations under the lease as amended.

The terms of the original guaranty agreement provide that Rusconi "unconditionally and absolutely Guarantees to Landlord the prompt payment, when due, of the rents and any and all other charges payable under the Lease . . . . Guarantor unconditionally and absolutely covenants to Landlord that, if Tenant shall default at any time in the Covenants to pay rent or any other charge stipulated in the Lease . . . then Guarantor will . . . pay the rent of (sic) other charges or arrears thereof that may remain due . . . and also all damages stipulated in the Lease. Guarantor shall pay to Landlord, on demand, all expenses (including reasonable expenses for attorney's fees and reasonable charges of every kind) incidental to, or relating to, the enforcement of this Guaranty Agreement." These terms apply to the obligations undertaken by Rusconi in paragraph 5 of the second amendment and, according to that paragraph agreed to by Rusconi, they "remain in full force and effect."

Tolland Meetinghouse's position that the terms of the guaranty agreement apply to the outstanding amounts due under the lease as amended in 2016 is not only reasonable, it is the only construction of the agreement stated in paragraph 5 that makes sense under the cir-

cumstances. The second amendment was agreed to in the context of eviction proceedings that Tolland Meetinghouse had initiated by serving a notice to quit, as referenced in paragraph 7 of the second amendment, and with the purpose of "restructuring the amounts due under the Lease," as stated in the recitals. The restructuring involved the forgiveness of $22,275.71 in past due rent and eighteen monthly installments to pay off the $100,000 balance, conditioned upon the timely making of those payments, the timely payment of future rent and the performance of all other lease obligations. Reading paragraph 5 of the second amendment in connection with the terms of the guaranty agreement, the only meaningful construction of paragraph 5 is that, in consideration of the concessions Tolland Meetinghouse made to Cardio Express, Rusconi agreed to guaranty the obligations of Cardio Express under the lease as amended. Granted that the original guaranty agreement had expired, paragraph 5 can only be understood as a new guaranty agreement on the same terms and conditions as were agreed under the original guaranty agreement except that the original five year limit, which was no longer congruous, was superseded by the new promise to guaranty performance.

Rusconi's argument revolves around the use of the word "remain" in paragraph 5. Focusing on the provision that the "Guaranty shall remain in full force and effect," he argues, "But it was no longer in full force and effect at that time, and could not 'remain' in full force and effect, as it had previously expired." While semantically sound, this analysis leads Rusconi himself to the conclusion that paragraph 5 is merely the reaffirmation of a "nullity" because the terms of the guaranty agreement remained in effect only as to obligations that no longer existed. At the time the second amendment was agreed to, Cardio Express' obligations were all future obligations under the lease as amended. Paragraph 5 has no purpose unless it is construed to mean that the terms of the guaranty agreement remain in effect as to those future obligations.

"Parties do not ordinarily insert meaningless provisions in their agreements and, therefore, if it is reasonably possible to do so, every provision must be given effect. . . . We are reluctant to conclude that a contractual provision constitutes a meaningless gesture by the parties." (Citations omitted; internal quotations omitted.) *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 534, 630 A.2d 115 (1993). Rusconi's alternative constructions of paragraph 5 violate this "elementary [principle]." *Hatcho Corp.* v. *Della Pietra*, supra, 195 Conn. 20. Rusconi himself characterizes paragraph five as a "nullity" under his principal construction, and his alternative construction would only make him responsible for obligations that had already been satisfied at the time of the second amendment. The only reasonable construction of paragraph

that gives that provision any practical meaning is that Rusconi agreed to guarantee Cardio Express' remaining obligations under the lease at the time the second amendment was executed. To the extent that this agreement conflicts with the five year term limit provisions in the original guaranty agreement, it must be understood that paragraph 5 modifies and supersedes those provisions. "[T]he rules of construction . . . dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses. . . . Where two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions." (Citations omitted.) *Dugan* v. *Grzybowski*, 165 Conn. 173, 179, 332 A.2d 97 (1973); see *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, supra, 32 Conn. App. 534. The court concludes that Rusconi clearly and unambiguously agreed to guarantee the obligations of Cardio Express under the lease as amended in April, 2016.

Cardio Express does not dispute liability, but does dispute damages. It must be presumed that Rusconi disputes damages as well. Tolland Meetinghouse has documented its damages with an affidavit and supporting documents whose admissibility has not been questioned by the defendants. Neither Cardio Express nor Rusconi, however, has submitted an affidavit, documents or testimony establishing an evidentiary basis for their opposition to Tolland Meetinghouse's damages claim. Once a moving party has met its burden to demonstrate that no genuine issue of fact exists, "the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, supra, 317 Conn. 228. The materials submitted by Tolland Meetinghouse demonstrate clearly what the damages are, and the defendants have put forward no evidence supporting the existence of a genuine dispute over them. If the defendants wished to "cross-examine the plaintiff's representative" on the plaintiff's evidence before the issue of damages was adjudicated, they were obliged to seek the deposition of that representative, which they did not do.[3] The record as it stands on summary judgment supports not only the construction of the contract as a matter of law, it also supports the determination of damages due to the absence of any factual dispute.

Although the defendants did not create an evidentiary record upon which to dispute the Tolland Meetinghouse's damages claims, they did reference certain case law that bears upon the issue, albeit in the context of Rusconi's arguments opposing liability. In *1916 Post Road Associates, LLC* v. *Mrs. Green's of Fairfield, Inc.*, supra, 191 Conn. App. 25, the court held that a lease guarantor's obligations did not extend beyond the end

of the lease term because the guarantee was "limited to the payment and performance of the tenant's obligations under the lease 'effective as of the date hereof.' " See also *Village Linc Corp.* v. *Children's Store, Inc.*, 31 Conn. App. 652, 658, 626 A.2d 813 (1993). The guaranty signed by Rusconi is more explicit in this respect by expressly disclaiming any responsibility on the part of Rusconi in the event the tenant holds over. Retaining this limitation is not inconsistent with paragraph 5 of the second amendment and, therefore, it remains enforceable. Consequently, the amount of damages sought from Rusconi must be reduced by the amounts attributable to the holdover period. The court has calculated that amount as $42,412.63. Applying that reduction to the total amount of damages documented by Tolland Meetinghouse ($276,552.77) yields recoverable damages in the amount of $234,140.14 on the claim against Rusconi.

The lease and the guaranty agreement further obligate Cardio Express and Rusconi respectively to pay expenses, including attorney's fees, incurred in the enforcement of the guaranty agreement. Tolland Meetinghouse has documented those expenses in the amount of $20,797.26, with no dispute raised by Cardio Express or Rusconi, and therefore this amount will be added to the contract damages.

### CONCLUSION

Cardio Express has admitted liability, and there is no genuine issue of material fact concerning Rusconi's obligation to guarantee the performance of Cardio Express under the lease pursuant to the second amendment. Further, there is no genuine issue of material fact concerning the amount of damages Tolland Meetinghouse may recover. Rusconi's motion for summary judgment is denied. Tolland Meetinghouse's motion for summary judgment is granted and judgment shall enter in favor of Tolland Meetinghouse against Cardio Express in the amount of $297,350.03 and against Rusconi in the amount of $254,937.40. So ordered.

* Affirmed. *Tolland Meetinghouse Commons, LLC* v. CXF *Tolland, LLC,* 210 Conn. App. , A.3d (2022).

[1] Rusconi would maintain that his two alternative constructions are the only reasonable constructions, and he is entitled to summary judgment because he would owe nothing under either construction. As discussed [subsequently], however, the court disagrees that either of Rusconi's constructions of paragraph 5 are reasonable and concludes that Tolland Meetinghouse's construction is the only reasonable construction when the undisputed circumstances surrounding the making of the agreement are accounted for.

[2] At oral argument, counsel for the defendants was unable to identify any evidence in addition to that in the record on summary judgment concerning the surrounding circumstances, explaining that discovery had not been done. It appears from the defendants' arguments on summary judgment they believed discovery was unnecessary. If the defendants had believed discovery was necessary to complete the picture as to the surrounding circumstances, it was incumbent upon them to seek an opportunity to pursue discovery prior to an adjudication of the summary judgment motions, in accordance with Practice Book §§ 17-45 and 17-47. The factual record, therefore, is complete for purposes of construing the contract on summary judg-

ment.

[3] See footnote 2 of this opinion.

———————————————